# IN THE SUPREME COURT OF CALIFORNIA

SWEETWATER UNION HIGH SCHOOL DISTRICT,
Plaintiff and Respondent,

v.

GILBANE BUILDING COMPANY et al.,
Defendants and Appellants.

S233526

Fourth Appellate District, Division One
D067383

San Diego County Superior Court
37-2014-00025070-CU-MC-CTL

_____

February 28, 2019

Justice Corrigan authored the opinion of the court, in which Chief Justice Cantil-Sakauye and Justices Chin, Liu, Cuéllar, Kruger, and Manella[*] concurred.

_____

_____

[*]    Presiding Justice of the Court of Appeal, Second Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

SWEETWATER UNION HIGH SCHOOL DISTRICT v.
GILBANE BUILDING COMPANY

S233526

Opinion of the Court by Corrigan, J.

The narrow question here is what kind of evidence a court may consider in ruling on a pretrial anti-SLAPP motion in determining a plaintiff's probability of success. The inquiry has two aspects. One addresses the form in which the evidence is produced in connection with the motion. The other evaluates whether that evidence will be admissible at an eventual trial. We conclude the evidence produced by plaintiff Sweetwater Union High School District (the District) was properly considered and affirm the Court of Appeal's judgment.

## I. BACKGROUND

In November 2006, voters approved Proposition O, a bond measure to fund capital improvements in the District. The District solicited bids to manage various construction projects funded by the measure. It received seven proposals, including a joint submission from defendants Gilbane Building Company (Gilbane), The Seville Group, Inc. (SGI), and Gilbane/SGI, a joint venture (the Joint Venture). A screening committee selected three finalists. The final review committee, consisting of School Superintendent Jesus Gandara and three others, selected defendants' proposal as the winning bid. Gandara was authorized to negotiate a contract. The District board ultimately approved several contracts with defendants to

1

manage projects arising from Proposition O and a previous measure.

A criminal bribery investigation into the awarding of the contracts resulted in an indictment. A number of guilty or no contest pleas followed, including those of Superintendent Gandara, board of trustees members Pearl Quinones, Arlie Ricasa, and Gregory Sandoval, as well as Gilbane program director Henry Amigable and SGI chief executive officer Rene Flores.

The District sued to void the contracts and secure disgorgement of funds already paid. It alleged that Amigable, Flores, and others gave meals, vacations, and event tickets to Gandara, board members and their families and friends. (See Gov. Code, §§ 1090, 1092, subd. (a).[1]) It also alleged contributions were made to various campaigns, charities, and events on the officials' behalf.[2] The conduct allegedly occurred

---

[1]  Government Code section 1090, subdivision (a) prohibits listed officers and employees from being "financially interested in any contract made by them in their official capacity, or by any body or board of which they are members." Section 1090, subdivision (b) proscribes aiding and abetting a violation of subdivision (a). "Every contract made in violation of any of the provisions of Section 1090 may be avoided at the instance of any party except the officer interested therein." (Gov. Code, § 1092, subd. (a).)

[2]  The Court of Appeal elaborated that " 'financial inducements' " included: "(1) 'Numerous dinners at expensive restaurants,' (2) 'Tickets to the theater and sporting events, including Charger games and . . . The Jersey Boys,' (3) 'Hotel accommodations, food, and tickets to the Rose Bowl in Pasadena,' (4) 'Airfare, hotel accommodations, wine tasting,

both before the passage of Proposition O and during the bidding and approval process.

Gilbane and the Joint Venture[3] brought a special motion to strike under Code of Civil Procedure[4] section 425.16 (the SLAPP[5] Act). Defendants urged the complaint stemmed from constitutionally protected political expression. The District's response relied on evidence of the various guilty and no contest pleas. Each plea form incorporated a written factual narrative attested to under penalty of perjury. Amigable's narrative stated: "I provided gifts, meals and tickets to entertainment events directly to [Superintendent Gandara and board members Sandoval, Ricasa, and Quinones]. I provided the meals, tickets and gifts upon my initiative as sanctioned and encouraged by my employers. I also provided meals, tickets and gifts at the request of the elected board members and the Superintend[e]nt. The meals, tickets and gifts were made on behalf of my employers with the intent to influence the board's decisions in granting construction contracts from the Sweetwater Union High School District to the firms for which I

---

and a hot air balloon ride in Napa Valley,' and (5) 'Monetary contributions to beauty pageants, charities, and campaigns on behalf of District officials.' "

[3]      SGI did not join in the motion.

[4]      Subsequent statutory references are to the Code of Civil Procedure unless otherwise noted.

[5]      " 'SLAPP' is an acronym for 'strategic lawsuit against public participation.' " (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381, fn. 1 (*Baral*); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57 (*Equilon Enterprises*).)

was working. My expenses were generated with the endorsement of my employers and they were reimbursed to me by my employers. At no time did the elected board members or Superintend[e]nt reimburse me or my employers for the meals, tickets or gifts I gave them on behalf of my employers." Flores's narrative included a similar statement. Ricasa's statement read in part: "In 2009, I was an elected School Board Member for the Sweetwater Union High School District. I accepted gifts from Rene Flores (SGI) in 2009 with a value of $2,099 and I did not report them. . . . Rene Flores provided these gifts with the intent to influence my vote on business awarded to Seville Group, Inc." Quinones's statement said that she "accepted gifts from Henry Amigable in 2007 with a total value in excess of $500.00 and I did not report them" and that "Henry Amigable provided these gifts with the intent to influence my vote on business awarded to Gilbane, his employer." Both Sandoval's and Gandara's statements indicated that they received gifts from Amigable and Flores "with a total value of more than" $2,770 (Sandoval) and $4,500 (Gandara) and failed to report them. They acknowledged these gifts were provided "to influence my vote on business awarded to" defendants.

The District also relied on excerpts from the grand jury testimony of several witnesses, including Amigable and Flores, who described their conduct in providing meals and tickets to plaintiff's officers.[6] The court overruled defendants'

---

[6] These excerpts were lodged as exhibits to plaintiff's summary judgment motion against SGI.

evidentiary objections and denied their special motion to strike. The Court of Appeal affirmed.[7]

## II. DISCUSSION

### A. *The Anti-SLAPP Statute*

"Code of Civil Procedure section 425.16 sets out a procedure for striking complaints in harassing lawsuits that are commonly known as SLAPP suits . . . which are brought to challenge the exercise of constitutionally protected free speech rights." (*Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 196.) A cause of action arising from a person's act in furtherance of the "right of petition or free speech under the [federal or state] Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability" that the claim will prevail. (§ 425.16, subd. (b)(1).) "The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity. Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the

---

[7] After our grant of review, the parties have indicated that they have settled the case. We exercise our discretion to retain the case to resolve a conflict in the Courts of Appeal that precipitated our grant of review. (See *State of Cal. ex rel. State Lands Com. v. Superior Court* (1995) 11 Cal.4th 50, 60-62.)

required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. We have described this second step as a 'summary-judgment-like procedure.' [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] '[C]laims with the requisite minimal merit may proceed.' " (*Baral, supra,* 1 Cal.5th at pp. 384-385, fn. omitted.) "We review de novo the grant or denial of an anti-SLAPP motion." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.) As to the second step inquiry, a plaintiff seeking to demonstrate the merit of the claim "may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence." (*San Diegans for Open Government v. San Diego State University Research Foundation* (2017) 13 Cal.App.5th 76, 95; see *Grenier v. Taylor* (2015) 234 Cal.App.4th 471, 480; *City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 376; *Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1017.)

## B. *Affidavits and Their Equivalents*

The anti-SLAPP statute describes what evidence a court may consider at the second step. It provides that "[i]n making its determination, the court shall consider the pleadings, and supporting and opposing *affidavits* stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2),

italics added.) "The pleadings are the formal allegations by the parties of their respective claims and defenses . . . ." (§ 420.) A complaint must include a "statement of the facts constituting the cause of action, in ordinary and concise language." (§ 425.10, subd. (a)(1).) The Code of Civil Procedure provides three ways in which testimony is taken: by affidavit, deposition, or oral examination. (§ 2002.) "An affidavit is a written declaration under oath, made without notice to the adverse party." (§ 2003.) An affidavit "may be taken before any officer authorized to administer oaths." (§ 2012; see also §§ 2013, 2014.)

Although not mentioned in the SLAPP Act, the Code of Civil Procedure also allows a court to consider, in lieu of an affidavit, certain written declarations. To qualify as an alternative to an affidavit, a declaration must be signed and recite that the person making it certifies it to be true under penalty of perjury. The document must reflect the date and place of execution, if signed in California, or recite that it is executed "under the laws of the State of California." (§ 2015.5; see *Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 610 (*Kulshrestha*).)

The purpose of the statutory references to affidavits and declarations is to enhance reliability. "As with live testimony, the oath-taking procedures for affidavits help prevent perjury. [Citation.] [¶] In 1957, the Legislature enacted section 2015.5, authorizing declarations under penalty of perjury. [Citation.] Lawmakers expressed concern that the oath-and-affidavit procedure was both cumbersome and widely ignored. [Citation.] Declarations serve as a more streamlined means of ensuring that the witness understands 'the grave

responsibility he has assumed with respect to the truth[].' " (*Kulshrestha, supra,* 33 Cal.4th at p. 609.) *Kulshrestha* concluded that the out-of-state declaration at issue there failed to comply with section 2015.5 because it did not reflect it was made under penalty of California's perjury laws. (*Kulshrestha,* at pp. 610-618.)

Defendants argue that the factual narratives attached to the plea forms and the excerpts of the grand jury testimony are hearsay because they were made out of court and were being offered for their truth. (Evid. Code, § 1200.) They urge the court could only consider them if they fell within the former testimony hearsay exception. (Evid. Code, § 1292.) Initially, we agree that the hearsay rule applies. The Evidence Code states that, "[e]xcept as otherwise provided by statute, this code applies in every action before" the California courts. (Evid. Code, § 300.)

However, statutes allowing consideration of some statements in resolving pretrial motions provide an exception to the hearsay rule for purposes of the motion. (See *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1355; § 2009.) *Elkins* emphasized that "[a]lthough affidavits or declarations are authorized in certain *motion* matters under Code of Civil Procedure section 2009, this statute does not authorize their admission at a contested *trial* leading to judgment." (*Elkins,* at p. 1355.) Although affidavits and declarations constitute hearsay when offered for the truth of their content, section 425.16, subdivision (b)(2) permits their consideration in ruling on a pretrial anti-SLAPP motion. In connection with the form of the declaration, then, defendants' hearsay objection fails. These declarations may be considered, not because they satisfy

some other hearsay exception, but because they qualify as declarations or their equivalent under section 2015.5, and can be considered under section 425.16.

The change of plea forms may constitute declarations under section 2015.5 if signed under penalty of perjury. (See *Kulshrestha, supra,* 33 Cal.4th at p. 606.) "[C]ourts have made clear that a declaration is defective under section 2015.5 absent an express facial link to California or its perjury laws." (*Id.* at p. 612; see *People v. Bryant* (2011) 191 Cal.App.4th 1457, 1470.) The Court of Appeal below concluded that "[e]ach plea form submitted by Sweetwater with respect to the anti-SLAPP motion meets the requirements set forth in section 2015.5 of the Code of Civil Procedure. Specifically, each individual who signed and dated a plea form attested to the truth of the contents . . . under penalty of perjury under the laws of California." Accordingly, the change of plea forms and the incorporated factual narratives qualify as declarations the court may consider in determining plaintiffs' likelihood of success.

The excerpts of the grand jury testimony, however, require a different analysis. Although testimony before the grand jury is given under oath, a *transcript* of that testimony is not a "written declaration under oath." (§ 2003.) Rather, a transcript is a written memorialization of an oral examination under oath. (See § 2005 [defining "oral examination"].) Likewise, a transcript of testimony is not a declaration under section 2015.5 because it is not "subscribed by" the testifying witness.

Nevertheless, the Court of Appeal concluded the grand jury testimony could still be considered because "the

9

transcripts are of the same nature as a declaration in that the testimony is given under penalty of perjury." The court relied on *Williams v. Saga Enterprises, Inc.* (1990) 225 Cal.App.3d 142 (*Williams*). *Williams* involved a summary judgment motion and held the trial court could consider the transcript of testimony from a related criminal case. *Williams* acknowledged that the transcript did not qualify as former testimony under Evidence Code section 1292 because there was no showing that the witness was unavailable. It reasoned, however, that "inasmuch as the recorded testimony was offered in support of the opposition to a summary judgment motion and serves effectively as a declaration by [the witness], we treat it here as such." (*Williams*, at p. 149, fn. 3.)

This analysis is sound. The statutory scheme already permits consideration of affidavit equivalents. (§ 2015.5.) As *Kulshrestha* noted, the important aspect of such evidence is that it be made under penalty of California's perjury laws. (See *Kulshrestha, supra,* 33 Cal.4th at pp. 610-618.) Sworn testimony made before a grand jury obviously is made under penalty of perjury. (Cf. *People v. Snyder* (1958) 50 Cal.2d 190, 192.) As *Williams* and the Court of Appeal reasoned, a transcript of this testimony is the equivalent of a testifying witness's declaration under penalty of perjury, assuming the authenticity of the transcript can be established. Defendants here do not contest authenticity.

The text of the anti-SLAPP statute does not speak directly to the issue, but permitting courts to consider recorded testimony is consistent with the purposes of the Act. The law's central aim is "screening out meritless claims that arise from protected activity, before the defendant is required to undergo

the expense and intrusion of discovery." (*Baral, supra,* 1 Cal.5th at p. 392.) The Legislature "has provided, and California courts have recognized, substantive and procedural limitations that protect plaintiffs against overbroad application of the anti-SLAPP mechanism. . . . 'This court and the Courts of Appeal, noting the potential deprivation of jury trial that might result were [section 425.16 and similar] statutes construed to require the plaintiff first to *prove* the specified claim to the trial court, have instead read the statutes as requiring the court to determine only if the plaintiff has stated and substantiated a legally sufficient claim.' " (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1122-1123.)

It would not serve the purposes of the SLAPP Act to preclude consideration of testimony made under oath. This sworn testimony is at least as reliable as an affidavit or declaration. An anti-SLAPP motion is filed early in the case, usually within 60 days of service of the complaint. (§ 425.16, subd. (f).) Discovery is stayed once the motion is filed. (§ 425.16, subd. (g).) Under these circumstances, it may not be practicable for a plaintiff to obtain declarations from various witnesses, particularly those associated with the defense. Further, under the present circumstances, even if declarations were obtained, they would have added little to the evidence already in plaintiff's possession. It seems doubtful that the Legislature contemplated dismissal of a potentially meritorious suit for want of declarations largely duplicating available evidence.

*Gatton v. A.P. Green Services, Inc.* (1998) 64 Cal.App.4th 688 (*Gatton*) reached a different conclusion. In the summary

judgment context, *Gatton* concluded the trial court could not consider excerpts from two depositions in another case because the plaintiffs failed to satisfy the requirements of the former testimony hearsay exception. (Evid. Code, § 1292.) *Gatton* criticized *"Williams*'s casual view of trial testimony from another trial and declarations on summary judgment as being 'the same . . . .' [Citation.] Our Legislature has given this careful consideration and decided otherwise, mandating both unavailability, to ensure necessity, and a similar interest and motive in the prior proceeding, to ensure fairness." (*Gatton*, at p. 694.) *Gatton* reasoned that a "deposition from another case differs greatly from a declaration from the same witness saying that, if called to trial in the current case, the witness would testify in a particular manner on specified subjects." (*Id.* at p. 695; see *L&B Real Estate v. Superior Court* (1998) 67 Cal.App.4th 1342, 1346-1348 [following *Gatton*].)

Relying on *Gatton*, defendants argue that a witness testifying in a different case may not have been cross-examined with the same motive as the parties here. Their reliance is misplaced. The former testimony exception is not the correct lens through which to examine this question. When satisfied, the former testimony exception permits admissibility at trial because the earlier opportunity for cross-examination ensures sufficient reliability. (See *People v. Gonzales* (2012) 54 Cal.4th 1234, 1262.) In the anti-SLAPP motion context, however, reliability stems from the oath-taking procedures required for affidavits, or the execution under penalty of California perjury laws required by declarations. (Cf. *Kulshrestha, supra,* 33 Cal.4th 601, 606.) Indeed, even affidavits or declarations produced specifically for this case would not be subject to cross-

examination. Yet, the statutory scheme clearly contemplates that courts may consider them.[8]

Defendants further suggest that use of statements from a different case should not be allowed because "[n]o showing need be made that the declarant is available or unavailable, alive or dead, competent or demented." Defendants misunderstand the role of these statements in a second step anti-SLAPP procedure. As we explain in detail below (see *post,* at pp. 15-21), the affidavit or declaration is offered to demonstrate that admissible evidence exists to prove plaintiff's claims. The statements must reflect that they were made by competent witnesses with personal knowledge of the facts they swear to be true. A transcript of a witness's testimony under oath before a grand jury would serve to establish personal knowledge and competence in the same manner that an affidavit or declaration could.

In a somewhat related context, the statute governing summary judgment motions reflects a similar understanding of the role played by affidavits and declarations. That statute requires that "[s]upporting and opposing affidavits or declarations shall be made by a person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations."

---

[8]    We disapprove *Gatton v. A.P. Green Services, Inc., supra,* 64 Cal.App.4th 688, and *L&B Real Estate v. Superior Court, supra,* 67 Cal.App.4th 1342, to the extent they are inconsistent with our opinion.

(§ 437c, subd. (d).)[9]   As noted, we have described the anti-SLAPP motion as a "summary-judgment-like procedure at an early stage of the litigation" designed to weed out meritless suits " ' "without great cost to the SLAPP target." ' "  (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192; see *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 642 (*Newport Harbor Ventures*).)  Similarly, "it has always been '[t]he purpose of the law of summary judgment . . . to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute.'  [Citations.]  And section 437c has always required the evidence relied on in supporting or opposing papers to be *admissible*."  (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 542 (*Perry*).)

There are important differences between the two schemes.  Chief among them is that an anti-SLAPP motion is filed much earlier and before discovery.  However, to the extent both schemes are designed to determine whether a suit should be allowed to move forward, both schemes should require a showing based on evidence potentially admissible at trial presented in the proper form.  The grand jury transcripts at issue here satisfy this requirement.

---

[9]   We do not here create a different requirement for anti-SLAPP litigation.  As in the summary judgment context, an affidavit or declaration will generally be sufficient as to form if it satisfies section 437c, subdivision (d).

Thus, in determining a plaintiff's probability of success, the court may consider statements that are the equivalent of affidavits and declarations because they were made under oath or penalty of perjury in California. Here, the change of plea forms, factual narratives, and the excerpts from the grand jury testimony satisfy this requirement. That conclusion does not end the inquiry.

C. *The Materials Must Describe Admissible Evidence*

In addition to submission in the proper form, courts have long required that the evidence relied on by the plaintiff be admissible at trial. *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809 (*Wilcox*) (overruled on another ground in *Equilon Enterprises, supra,* 29 Cal.4th at p. 68, fn. 5) explained that unless "the evidence referred to was admissible, or at least not objected to, . . . there would be nothing for the trier of fact to credit." (*Wilcox*, at p. 830.) Similarly, *Evans v. Unkow* (1995) 38 Cal.App.4th 1490 (*Evans*), observed that "[a]n assessment of the probability of prevailing on the claim looks to *trial*, and the evidence that will be presented at that time. [Citation.] Such evidence must be *admissible*." (*Id*. at p. 1497; see also *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1235-1238 (*Tuchscher Development Enterprises*); *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 656 (*Church of Scientology*), overruled on another ground in *Equilon Enterprises,* at p. 68, fn. 5.)

*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811 held a malicious prosecution claim was precluded because the earlier denial of an anti-SLAPP motion established probable cause for a suit. *Wilson* observed that "[a] claim that

is legally sufficient *and can be substantiated by competent evidence* is . . . one that a 'reasonable attorney would have thought . . . tenable.' " (*Id.* at p. 821, italics added.) As one court observed, *Wilson* "contemplates a SLAPP plaintiff's presentation of competent, i.e., admissible, evidence in support of its prima facie case in opposition to the motion." (*Tuchscher Development Enterprises, supra,* 106 Cal.App.4th at p. 1237.) *Baral* explained, "The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, *if accepted by the trier of fact, would be sufficient to sustain a favorable judgment.*" (*Baral, supra,* 1 Cal.5th at p. 396, italics added.)

Defendants return to their reliance on the former testimony hearsay exception. (Evid. Code, § 1292.) That exception requires the declarant be unavailable as a witness, and "[t]he issue is such that the party to the action or proceeding in which the former testimony was given had the right and opportunity to cross–examine the declarant with an interest and motive similar to that which the party against whom the testimony is offered has at the hearing." (Evid. Code, § 1292, subd. (a)(3).) Defendants contend, unless this showing is definitively made *at the hearing*, a court may not consider the statements in determining the probability of success.[10] The argument runs ahead of itself and accordingly

---

[10] Defendants do not differentiate between the grand jury transcript and the plea forms, arguing both must satisfy the requirements for former testimony in order to be admitted. It is doubtful that statements in the plea forms constitute "former testimony." (Evid. Code, § 1290.) The more

fails. As explained below, evidence may be considered at the anti-SLAPP motion stage if it is reasonably possible the evidence set out in supporting affidavits, declarations or their equivalent will be admissible at trial.

In *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138 (*Fashion 21*), a clothing retailer sued, alleging the defendants handed out defamatory flyers at demonstrations outside the plaintiffs' stores. In response to the defendants' anti-SLAPP motion, the plaintiffs presented an edited videotape purporting to show one of the demonstrations. (*Id.* at p. 1145.) The defendants objected that the edited videotape was not properly authenticated. The court acknowledged that "[h]ad this videotape been offered at trial, [the defendants'] objection would have been well taken" (*id.* at p. 1146), noting that, under Evidence Code section 1402, authentication required a showing that "the alteration did not change the meaning . . . of the instrument" (Evid. Code, § 1402). (See *Fashion 21*, at p. 1146, fn. 9.)[11] However, the court concluded the videotape could be

___

appropriate hearsay exception would be a declaration against interest. (Evid. Code, § 1230.) That exception also requires unavailability, but not a previous opportunity to cross-examine. (See Evid. Code, § 1292, subd. (a)(3).) Detailed explanations of one's own criminal misconduct in a formal legal proceeding would surely seem to satisfy the exception. "[A] guilty plea falls within the hearsay rule exception for declarations against penal interest." (*People v. Cummings* (1993) 4 Cal.4th 1233, 1321.)

[11] The videotape was not accompanied by an affidavit or declaration. (*Fashion 21, supra,* 117 Cal.App.4th at p. 1145.)

considered: "[T]he proper view of 'admissible evidence' for purposes of the SLAPP statute is evidence which, by its nature, is capable of being admitted at trial, i.e., evidence which is competent, relevant and not barred by a substantive rule. Courts have thus excluded evidence which would be barred at trial by the hearsay rule, or because it is speculative, not based on personal knowledge or consists of impermissible opinion testimony. This type of evidence cannot be used by the plaintiff to establish a probability of success on the merits because it could *never* be introduced at trial. . . . [¶] Evidence such as the videotape in this case, which is only excludable on the ground it lacks proper authentication, stands on a different footing in terms of its ability to support the plaintiffs' cause of action. . . . [E]vidence that is made inadmissible only because the plaintiff failed to satisfy a precondition to its admissibility [at trial] could support a judgment for the plaintiff assuming the precondition could be satisfied." (*Id.* at pp. 1147-1148, italics added, fns. omitted.) *Fashion 21* concluded: "Given the high probability Fashion 21 would succeed in offering the videotape into evidence at trial and the 'minimal' showing necessary to overcome a SLAPP motion, we hold the trial court did not commit reversible error in considering the videotape in

---

Apparently, the defendants did not argue the tape could not be considered because it was not so supported. The *Fashion 21* court confined its discussion to whether the edited tape could be admissible at trial. (See *id.* at pp. 1145-1146.) Ordinarily, we would expect a party seeking consideration of other kinds of evidence demonstrate its admissibility by a supporting affidavit or declaration.

determining Fashion 21's likelihood of prevailing . . . ." (*Id.* at
p. 1148, fn. omitted.)

Other cases support the distinction between evidence
that *may* be admissible at trial and evidence that could *never*
be admitted. For example, *Healthsmart Pacific, Inc. v.
Kabateck* (2016) 7 Cal.App.5th 416, affirmed the grant of an
anti-SLAPP motion because the defamation suit there was
based on privileged statements. (*Id.* at pp. 430-437.) *Wilcox*
reached a similar conclusion in another defamation case,
concluding that the petitioner could not overcome a privilege.
(*Wilcox, supra,* 27 Cal.App.4th at pp. 825-827.) The privileged
statements in both cases could not be admitted by substantive
rule. Likewise, *Evans* concluded a statement made only on
information and belief was incompetent for lack of personal
knowledge. (*Evans, supra,* 38 Cal.App.4th at p. 1498.) In
other words, such evidence suffers from "the sort of evidentiary
problem a plaintiff will be incapable of curing by the time of
trial." (*Gallagher v. Connell* (2004) 123 Cal.App.4th 1260,
1269.)

Although not involving an anti-SLAPP motion, *Perry v.
Bakewell Hawthorne, LLC, supra,* 2 Cal.5th 536, 538, is
instructive: "[W]hen the court determines an expert opinion is
inadmissible because disclosure requirements were not met,
the opinion must be excluded from consideration at summary
judgment if an objection is raised." *Perry* noted that the
summary judgment statute required that supporting affidavits
and declarations "set forth admissible evidence." (§ 437c,
subd. (d); see *Perry*, at p. 541.) "The condition that an expert's
declaration must set out admissible evidence, however, has
determinative importance. . . . [T]he summary judgment

statute still requires the evidence provided in declarations to be *admissible at trial*. [Citations.] Declarations themselves are not ordinarily admissible because they are hearsay. But the *Kennedy* court [*Kennedy v. Modesto City Hosp.* (1990) 221 Cal.App.3d 575] erred when it suggested that the evidence contained in summary judgment declarations need not be admissible at trial." (*Perry*, at p. 541.) *Perry* reasoned that, because the failure to comply with the disclosure statute rendered the evidence incurably inadmissible at trial, it could not properly be considered in ruling on a summary judgment motion. (*Id*. at pp. 541-543.)[12]

This case, like *Fashion 21*, describes evidence that is potentially admissible at trial. Here, unlike the facts in *Perry*, there is no categorical bar to statements contained in the grand jury transcript and plea forms. Indeed, the statements themselves appear to be statements against interest. (Evid. Code, § 1230.) Further, there are no undisputed factual circumstances suggesting the evidence would be inadmissible at trial. In *Fashion 21*, the videotape at issue could be admitted at trial if properly authenticated. In the videotaped demonstration, "employees and representatives of Fashion 21 . . . along with" others were present (*Fashion 21, supra,* 117 Cal.App.4th at p. 1145), suggesting there were identifiable witnesses who had personal knowledge of the events. The

---

[12] To clarify the distinction, the *written statements themselves* need not be admissible at trial, but it must be reasonably possible that the *facts asserted* in those statements can be established by admissible evidence at trial.

signers of those documents or other competent witnesses could testify at trial to support the District's claims. That live testimony would supplant any improper reliance on hearsay. Finally, plaintiff would have the opportunity to satisfy the requirements of any other applicable hearsay exceptions before admission at trial.

Our observation in the previous section regarding the timing of an anti-SLAPP motion and the stay of discovery applies equally here. It may not be possible at the hearing to lay a foundation for trial admission, even if such a showing could be made after full discovery. While it may prove difficult at this early stage to obtain declarations from those who have pled guilty in the bribery case, it is not unreasonable to expect that those witnesses may be deposed and/or produced for trial. To strike a complaint for failure to meet evidentiary obstacles that may be overcome at trial would not serve the SLAPP Act's protective purposes. Ultimately, the SLAPP Act was "intended to end meritless SLAPP suits early without great cost to the target" (*Newport Harbor Ventures, supra,* 4 Cal.5th at p. 644), *not* to abort potentially meritorious claims due to a lack of discovery. Notwithstanding the discovery stay, the court has discretion to order, upon good cause, specified discovery if required to overcome the hurdle of potential inadmissibility. (§ 425.16, subd. (g).)

In sum, at the second stage of an anti-SLAPP hearing, the court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial. Conversely, if the evidence relied upon *cannot* be admitted at trial, because it is categorically barred or undisputed factual

circumstances show inadmissibility, the court may not consider it in the face of an objection.  If an evidentiary objection is made, the plaintiff may attempt to cure the asserted defect or demonstrate the defect is curable.

## III.  DISPOSITION

The Court of Appeal's judgment is affirmed.


**CORRIGAN, J.**


**We Concur:**


**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**MANELLA, J.**[*]

---

[*]     Presiding Justice of the Court of Appeal, Second Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Sweetwater Union High School District v. Gilbane Building Company

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 245 Cal.App.4th 19
**Rehearing Granted**

_____

**Opinion No.** S233526
**Date Filed:** February 28, 2019

_____

**Court:** Superior
**County:** San Diego
**Judge:** Eddie C. Sturgeon

_____

**Counsel:**

Dentons US, Charles A. Bird, Christian D. Humphreys and Gary K. Brucker, Jr., for Defendants and Appellants.

Schwartz Semerdjian Cauley & Moot, John S. Moot, Sarah Brite Evans, Alison K. Adelman; Baker Manock & Jensen and James A. Ardaiz for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Charles A. Bird
Dentons US
4655 Executive Drive, Suite 700
San Diego, CA  92121-3106
(619) 236-1414

John S. Moot
Schwartz Semerdjian Cauley & Moot
101 West Broadway, Suite 810
San Diego, CA  92101
(619) 236-8821