Filed 1/19/21  Pesci v. Hobbs CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CHERYL PESCI et al., | |
| Plaintiffs and Appellants, | G059073 |
| v. | (Super. Ct. No. 30-2019-01074366) |
| CAITLYN HOBBS et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, Nathan R. Scott, Judge.  Affirmed.

Law Offices of Mark B. Plummer and Mark B. Plummer for Plaintiffs and Appellants.

Murchison & Cumming, Lisa D. Angelo and Matthew E. Voss for Defendants and Respondents.

Cheryl Pesci (Cheryl), Patti Johnson, and Marianne Klee (Plaintiffs) appeal from the trial court's order granting Laura Zamora, Caitlyn Hobbs, and Keith Salek's (Defendants) special motion to strike[1] a malicious prosecution cause of action. Plaintiffs argue the court erred by concluding they did not demonstrate a probability of prevailing. We disagree and affirm the order.

FACTS

Robert Pesci (Robert), a nonagenarian, suffered from advanced dementia. Plaintiffs are three of Robert's children who handled his affairs. Jim Pesci (Jim), Plaintiffs' brother, resided with his father, Robert. Laura Zamora was an employee of Compassionate Heart Senior Care, Inc. dba Home Instead Senior Care Franchise #35 (Home Instead). Home Instead assigned Zamora to care for Robert at his home. Home Instead advertised it provided caregivers who were trained to care for patients suffering from dementia, but Zamora was not trained to do that.

The origin of this litigation was an incident Defendants claimed occurred when Zamora was caring for Robert one evening while Jim was away. Zamora alleged Robert "intentionally" fell to the ground. When Zamora tried to help Robert, her attorneys alleged in the complaint that he "sexually molested her."

Zamora retained Salek and Hobbs to represent her. They filed a complaint against Robert, Jim, Home Instead, and its parent company alleging 15 causes of action, including sexual battery and assault, hostile work environment, and wrongful discharge. Robert could not remember anything, and Plaintiffs were distraught over the allegations against their father and brother. Cheryl was appointed Robert's guardian ad litem.

---

[1]     A special motion to strike is also known as an anti-SLAPP (Strategic Lawsuit Against Public Participation) motion. (Code Civ. Proc., § 425.16, all further statutory references are to the Code of Civil Procedure; *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 938, fn. 5 (*Sweetwater*).)

Robert's homeowner's insurance provider denied coverage because the alleged misconduct was intentional. Plaintiffs used their own funds to hire an attorney to represent Robert and Jim.

At Zamora's deposition, she explained how on the night in question, Robert fell, she tried to help him up, and he grabbed her arm tightly, but she could not help him up. He eventually got up on his own. Robert, who was angry, made inappropriate sexual comments to her as he had once before. At some point, Robert fondled himself. She never claimed Robert sexually assaulted her, and she admitted she never called the police. Less than two weeks after Zamora's deposition, Defendants dismissed the case with prejudice.

Plaintiffs, Robert, and Jim filed a complaint against Defendants for malicious prosecution, fraud, and elder abuse. Defendants filed a special motion strike. Plaintiffs filed an opposition. The trial court denied the special motion to strike as to Robert and Jim, but granted it as to Plaintiffs. The court reasoned Defendants demonstrated the malicious prosecution action arose from protected conduct. The court opined Robert and Jim demonstrated a probability of prevailing on their malicious prosecution cause of action but Plaintiffs did not because they were not parties to the action, and thus, it was not resolved in their favor.

DISCUSSION

"Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Sweetwater, supra,* 6 Cal.5th at p. 940.) "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) Our review is de novo. (*Sweetwater, supra,* 6 Cal.5th at p. 940.)

3

*I. First Prong*

To make a showing under the first prong, the defendant must establish the cause of action arises from protected activity. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067; § 425.16, subd. (e).) Here, Plaintiffs do not dispute their malicious prosecution cause of action arises from protected activity and section 425.16 applies. Thus, we proceed to the second prong to determine whether they demonstrated a probability of prevailing.

*II. Second Prong*

If the defendant satisfies the first prong, the burden shifts to the plaintiff to establish the claim's merit by demonstrating "there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The plaintiff must demonstrate each cause of action is both legally sufficient and supported by a prima facie showing of facts sufficient to support a judgment. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 93.) "A plaintiff must plead and prove three elements to establish the tort of malicious prosecution: a lawsuit '(1) was commenced by or at the direction of the defendant and *was pursued to a legal termination favorable to the plaintiff*; (2) was brought without probable cause; and (3) was initiated with malice.' [Citation.]" (*Nunez v. Pennisi* (2015) 241 Cal.App.4th 861, 872-873, italics added.)

Here, Plaintiffs failed to demonstrate a probability of prevailing on their malicious prosecution cause of action. The underlying action was not pursued to a legal termination favorable to Plaintiffs. Plaintiffs were not parties to the underlying action. Defendant's 15-count complaint was against Robert, Jim, and Home Instead. It did not name Plaintiffs. Recognizing there is no case law supporting the conclusion they have standing, but countering there is no case law precluding it, Plaintiffs resort primarily to public policy.

Plaintiffs rely on several cases to advance their policy argument. (*Gregory v. Cott* (2014) 59 Cal.4th 996, 999-1000 [whether Alzheimer patients liable for injuries

they inflict on health care workers]; *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 591 [negligent infliction of emotional distress causes of action arising from family member's molestation]; *Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 923 [loss of consortium and negligent infliction of emotional distress causes of action arising from family member's misdiagnosis]; *Dillon v. Legg* (1968) 68 Cal.2d 728, 746 [bystander liability in negligence action arising from family member's death].) None of these cases, however, concerned section 425.16 or a malicious prosecution cause of action. We decline Plaintiffs' invitation to afford standing in a malicious prosecution case in the section 425.16 context to those who were not parties to the underlying litigation.

DISPOSITION

The order is affirmed. Respondents are awarded their costs on appeal.


O'LEARY, P. J.

WE CONCUR:


ARONSON, J.


FYBEL, J.

5