Filed 12/1/23  Shontz v. Reid & Hellyer CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| LEXIS BRANDON SHONTZ, | |
| Plaintiff and Appellant, | E079893 |
| v. | (Super.Ct.No. CVPS2201150) |
| REID & HELLYER, APC, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. Kira L. Klatchko, Judge. Affirmed.

Lexis Brandon Shontz, in pro per., and for Plaintiff and Appellant.

Reid & Hellyer and Daniel E. Katz, for Defendant and Respondent.

1

Occupants of a residential property brought a civil malicious prosecution claim against the law firm who sued them for eviction on behalf of the property owner. The law firm filed an anti-SLAPP motion to dismiss the malicious prosecution claim. The trial court granted the motion, finding the residents had not demonstrated they were likely to prevail on the merits of their claim because there was a lack of evidence the law firm had acted with malice. We agree with the trial court and affirm.

## I

## FACTS

On May 8, 2020, Lexis Brandon Shontz and Shireford Holdings LLC (Shireford) entered a residential lease on the property located at 74125 Setting Sun Trail in Palm Desert. The lease was set to end on May 8, 2021. Shireford is not a party to this appeal. Michelle DuPont was a party to this litigation at the trial level and purported to sign onto Shontz's opening appellate brief, but she never filed a notice of appeal, so she is not party to this appeal.

On February 3, 2021, attorney Barry Lee O'Connor prepared a 60-day notice to quit the property, and, on February 8, served it on Shontz and all other occupants of the property. The notice informed them they should vacate the property by May 8, 2021, because the owners were removing it from the rental market so that they or their close family members could occupy it.

On May 18, 2021, Maria Alemany, Skyline Holdings Trust, and David Abramowitz, as trustee of the Skyline Holdings Trust (collectively "Skyline") filed an

2

unlawful detainer action in Riverside County Superior Court against Shontz, DuPont, and Shireford (Case No. UDPS 2100247). Skyline alleged they had purchased the property, which Shontz and DuPont still occupied under an expired fixed-term lease, and sought their eviction. The complaint alleged the tenancy was not subject to the Tenant Protection Act of 2019, Civil Code section 1946.2. Attorney Barry O'Connor represented Skyline in bringing the complaint.

The trial court set a trial date of February 4, 2022. On January 8, 2022, Shontz and DuPont filed an amended answer to the complaint. Shontz and DuPont alleged DuPont was not a party to the lease and did not claim a right to possess the property as a tenant. Among other defenses, they also alleged—contrary to the complaint—that the property *was* governed by the Tenant Protection Act because the lease did not include the notice of exemption required by Civil Code section 1946.2, subdivision (e)(8)(B). They alleged for that reason and others that the lease was not subject to a 60-day notice to quit. They also alleged the notice was deficient for omitting a plan to mitigate disruption of eviction for the tenants, required by the Tenant Protection Act. They caused a copy of their amended answer to be served by email on attorney O'Connor.

Two days earlier, Skyline had retained Reid & Hellyer APC as new counsel to represent them in the lawsuit. Barry Swan was the attorney in charge of the case for Reid & Hellyer. Swan said he confirmed Skyline had purchased the property and that it was subject to an expired lease before accepting the representation on behalf of his law firm.

He said he knew attorney O'Connor to be an unlawful detainer attorney of good reputation and long experience.

According to a declaration submitted by Swan, he contacted Shontz by email on January 14, 2022, and asked for confirmation that he could use the email for pretrial communications. Between January 17 and January 20, 2022, Swan exchanged pretrial documents by email and had a telephone conference with Shontz. They reviewed the exhibit lists, witness lists, jury instructions and discussed a proposed joint statement of the case. Swan also had a meeting with Shontz by telephone to go over pre-trial documents. DuPont did not participate in any of these communications. On January 21, 2022, Swan and Shontz attended a trial readiness conference, where they learned the trial would not proceed as scheduled or in the foreseeable future due to court policies arising from the Covid pandemic.

After the trial readiness conference, Swan reviewed the notice to quit which O'Connor had prepared and concluded it was not in compliance with the Tenant Protection Act. Swan informed Abramowitz and Alemany of the deficiencies and received permission to file a request for dismissal without prejudice in the unlawful detainer action and to restart the unlawful detainer process with a revised notice to quit compliant with the Tennant Protection Act.

On January 25, 2022, Swan filed a request for dismissal without prejudice. The next day, he prepared a new notice to quit that offered the benefits and protections of the Tenant Protection Act and filed a second unlawful detainer action (Case No. UDPS

4

2200300) against Shireford and Shontz as its trustee, which alleged the tenancy is subject to the Tenant Protection Act.

On March 28, Shontz and DuPont sued Skyline Holdings Trust, Abramowitz, Alemany, and their law firm, Reid & Hellyer. Against the law firm, they asserted a single cause of action for malicious prosecution of the first eviction action. Only the claim against the law firm is at issue in this appeal. Shontz and DuPont alleged the original unlawful detainer action was meritless as a matter of law because DuPont was named as a defendant, the tenancy was protected by the Tenant Protection Act and Skyline had not complied with it, and the delinquency in payment of rent was excused under Civil Code section 1511. They alleged damages proximately caused by the malicious prosecution in the amount of $100,000 and sought punitive damages based on Skyline's malicious conduct. Shontz and DuPont acted as their own attorneys.

On July 15, Reid & Hellyer filed a motion to strike the malicious prosecution claim against them under the anti-SLAPP statute, Code of Civil Procedure section 425.16 (section 425.16). They argued representing litigants in a lawsuit is protected activity under section 425.16, and Shontz and DuPont could not sustain their burden of showing Reid & Hellyer, or Swan acting for the law firm, acted unreasonably or with malice in pursuing the first unlawful detainer action from when they were retained on January 6, 2022, until they dismissed the action on January 25, 2022. They also argued Shontz and DuPont could not show they were harmed by the conduct.

5

On July 28, Shontz and DuPont filed an opposition to the anti-SLAPP motion. They conceded Reid & Hellyer's representation of their client in litigation is protected activity under the anti-SLAPP statute, but argued the motion should be dismissed because they were likely to prevail on their malicious prosecution claim. They asked the court to take judicial notice of the pleadings from the two eviction actions and relied on those filings to support their opposition. They argued the 20-day period between when Reid & Hellyer were hired and when they dismissed the first unlawful detainer case was "the most expensive part of the litigation for Plaintiffs" because it was during this period they were engaged in "preparing jury instructions, exhibits, witness preparation, and compiling the various related documents required for a jury trial." They argued the law firm "recklessly let Plaintiffs run up a large attorney fee bill, spending their time and resources preparing for trial, and suffering the anxiety of the upcoming trial . . . all in the strategy of the Landlords to wear down Plaintiffs as part of their ongoing bullying style of landlording."

Shontz filed a declaration with the opposition papers. He asserted "[m]alice was shown by Counsel's continuing to prosecute [the first unlawful detainer action] despite the lack of probable cause, and by failing to investigate the claims made in our First Amended Answer, which would have clarified that [the lawsuit] lacked merit." Shontz claimed damages in the form of time getting ready for trial, anxiety over the threat of eviction during the pandemic, and attorney fees of $2,000 paid to an attorney to review the anti-SLAPP motion and research and draft the opposition.

On August 9, the trial court issued a tentative ruling granting the anti-SLAPP motion, which became the final ruling of the court. The court held "Plaintiff has failed to offer admissible evidence, or evidence that could be admissible at the time of trial, to establish a probability that it will prevail on its malicious prosecution claim against Reid & Hellyer." It explained, "The Plaintiffs have offered only judicially noticeable documents that do not, in any fashion, demonstrate malice on the part of Reid & Hellyer or any counsel at that firm. Further, the documents at issue in the request for judicial notice reflect that Reid & Hellyer dismissed [the first complaint] shortly after assuming the representation. The declaration from counsel confirms that Reid & Hellyer dismissed the litigation after discovering a deficiency in the notice given, and then moved to correct that deficiency and refile the litigation. Plaintiffs have not addressed that evidence, which, if anything, militates against a finding of malice."

## II

## ANALYSIS

Shontz and DuPont argue the trial court erred in determining they had not shown a probability of prevailing on the merits of their malicious prosecution claim.

"Code of Civil Procedure section 425.16 sets out a procedure for striking complaints in harassing lawsuits that are commonly known as SLAPP suits . . . which are brought to challenge the exercise of constitutionally protected free speech rights. A cause of action arising from a person's act in furtherance of the right of petition or free speech under the [federal or state] Constitution in connection with a public issue shall be subject

7

to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the claim will prevail. The anti-SLAPP statute does not insulate defendants from any liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, meritless claims arising from protected activity." (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940 (*Sweetwater Union*) [cleaned up].)

"A court evaluates an anti-SLAPP motion in two steps. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged. If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.' If the plaintiff fails to meet that burden, the court will strike the claim." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 [cleaned up].)

The California Supreme Court has "described this second step as a summary-judgment-like procedure. The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [C]laims with the requisite minimal merit may proceed. We review de novo the grant or denial of an anti-SLAPP motion. As to the second step inquiry, a plaintiff seeking to demonstrate the merit of the claim may not rely solely on its complaint, even if verified; instead, its proof must be

8

made upon competent admissible evidence." (*Sweetwater Union*, *supra*, 6 Cal.5th at p. 940 [cleaned up].)

The parties agree the malicious prosecution action arises from acts in furtherance of petition or free speech. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734, 746 [civil claim "based on allegations that [defendants] maliciously and without probable cause brought and maintained a cross-complaint against [plaintiff] in the course of a civil lawsuit, is subject to anti-SLAPP scrutiny"].) Thus, the only question on appeal is whether the plaintiffs carried their burden of producing admissible evidence in opposing the anti-SLAPP motion that, if believed by the trier of fact, was sufficient to support a judgment in favor of Shontz and DuPont. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)

"To prevail on a malicious prosecution claim, the plaintiff must show that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292.) In addition, an attorney may be held liable for malicious prosecution if they continue to prosecute a lawsuit after discovering it lacks probable cause. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 970 (*Zamos*).) The trial court determined Shontz and DuPont did not meet their burden of submitting admissible evidence that anyone at Reid & Hellyer acted maliciously, and it is that conclusion that is the focus of this appeal.[1]

---

[1] Reid & Hellyer argue the voluntary dismissal was not a favorable determination for Shontz, but we need not resolve that issue.

"The 'malice' element . . . relates to the subjective *intent or purpose* with which the defendant acted in initiating the prior action. The motive of the defendant must have been something other than that of bringing a perceived guilty person to justice or the satisfaction in a civil action of some personal or financial purpose. The plaintiff must plead and prove actual ill will or some improper ulterior motive. Malice may range anywhere from open hostility to indifference. Malice may also be inferred from the facts establishing lack of probable cause." (*Soukup*, *supra*, 39 Cal.4th at p. 292 [cleaned up].)

Shontz relies on the litigation history of the case as evidence to support an inference of malice. He points out DuPont is not a signatory to the lease. He also points out the agreement did not contain language necessary to take it outside the Tenant Protection Act, meaning the 60-day notice to quit was legally insufficient, the complaint wrongly omitted a plan to mitigate the costs of relocation, and eviction based solely on the expiration of the lease was not permitted. He also argues the complaint was deficient because the 60-day notice to quit could not be effective until the lease had ended and converted to a month-to-month lease. Finally, he argues the lease itself improperly charged more than two times the amount of the monthly rent as a security deposit.

Shontz alleges Reid & Hellyer acted out of malice in the approximately 20 days from the date they were hired as new counsel and when they dismissed the first complaint. Reid & Hellyer were not the lawyers who filed the first unlawful detainer action. They were hired as replacement attorneys less than a month before trial was set to begin. Attorney Swan first contacted Shontz on January 14, and 11 days later Reid &

10

Hellyer voluntarily dismissed the lawsuit, having determined the complaint was technically deficient. The next day they filed a new unlawful detainer action, which continued seeking Shontz's eviction from the property, but corrected the deficiencies Shontz points to as depriving the first lawsuit of probable cause. Nevertheless, Shontz argues this brief period was the most costly and stressful of the litigation due to the impending trial date, and he argues the facts of how Reid & Hellyer litigated during these days allow an inference that they acted with malice.

However, the inferences Shontz proposes a factfinder could draw are wildly unsupported. He argues the trier of fact might look at the date he filed the answer, January 8, and reasonably conclude the filing made Reid & Hellyer aware the complaint lacked merit and that they pursued trial preparations in the face of that knowledge. He also argues the trier of fact might conclude the attorney Reid & Hellyer were hired to replace had discovered the deficiencies and was fired because he wanted to dismiss the action, and further that he would have informed Reid & Hellyer of the deficiencies due to his ethical obligations. Regardless how the law firm realized the deficiencies, Shontz argues, it was reasonable to infer they knew of them (or were reckless in failing to discover them) and that their decision to proceed through several days of preparations up to the trial readiness conference was made solely for the purpose of "financially exhaust[ing]" him rather than prevailing on the merits.

This is pure speculation, not reasonable inference from evidence. We agree with the trial court that the documents Shontz relies on "do not, in any fashion, demonstrate

11

malice on the part of Reid & Hellyer or any counsel at that firm." There is simply no evidence to suggest Reid & Hellyer or Swan knew of the deficiencies in the complaint prepared by prior counsel until shortly before they voluntarily dismissed the action. The dismissal of the first complaint within 11 days of initiating contact with Shontz, followed by the refiling of the litigation the next day with the deficiencies corrected, supports an inference that the law firm was focused on obtaining the eviction effectively, rather than an inference that they intended to prosecute the action for improper purpose under a legally and factually unsupported theory.

Shontz argues he should prevail even if Reid & Hellyer did not affirmatively know of the deficiencies with the original complaint because it was reckless not to know sooner, when he raised the issues in his answer two days after the law firm had been hired. Shontz argues, "Even by Respondent's own account, malice was shown by its arrogant indifference to the truth, its smug confidence that it would win regardless of the law or facts, and its unbridled ego that no unrepresented tenant could have a chance against Respondent before this particular judge." Again, this wildly overstates the situation and, moreover, would hold the attorneys handling the case to a near-perfect duty to have immediately discovered the problems with their case.

Attorney Swan explained his actions in the case in detail. He was hired on January 8, 2022, a Saturday. He knew attorney O'Connor to be an experienced eviction lawyer with a good reputation. He contacted Shontz the next week to confirm they had open channels of communication as the trial date approached. The following week, between

12

Monday and Thursday, Swan and Shontz exchanged pretrial documents by email and had a telephone conference, where they reviewed the exhibit lists, witness lists, jury instructions, and discussed a proposed joint statement of the case. That Friday, they attended a trial readiness conference. It was after that conference that Swan says he reviewed the notice to quit O'Connor had prepared and concluded it was not in compliance with the Tenant Protection Act. He contacted his clients, and the following Tuesday he filed a motion to dismiss the case. Nothing about this schedule on its own suggests reckless disregard for the truth. We therefore conclude, like the trial court, that Shontz failed to carry his burden of establishing Reid & Hellyer acted with malice.

Shontz argues Reid & Hellyer's dismissal of the first complaint should not weigh against finding malice, relying on *Zamos* for the proposition that malicious prosecution includes "continuing to prosecute a lawsuit discovered to lack probable cause." (*Zamos*, *supra*, 32 Cal.4th at p. 970) However, *Zamos* did not involve a voluntary dismissal but *did* involve *significant* evidence that attorney Stroud obtained very specific evidence showing he knew the litigation was baseless shortly after initiating the lawsuit. Attorney Zamos had represented the client in a foreclosure action and obtained a settlement of $250,000 against a subset of the defendants. The settlement required the client to relinquish her claims to the property. However, the client later sued attorney Zamos alleging, among other things, that he promised he would represent her against the nonsettling defendants until judgment and would seek to have her house returned to her. (*Id.* at p. 961.) Stroud brought a fraud case including these allegations against Zamos, but

13

Zamos demonstrated their falsity almost immediately by submitting transcripts from the foreclosure litigation, showing the client agreeing on the record to release all claims to her house and agreeing to release Zamos from representing her further in the litigation. Zamos asked Stroud and his client to dismiss the lawsuit in the face of this evidence, but they refused, and the case continued to trial. Ultimately, the trial court granted Zamos a nonsuit based on the same transcripts. (*Id.* at pp. 961-963.) There is no such inculpating evidence in this case.

Moreover, one of the reasons the Supreme Court adopted the rule that a malicious prosecution claim could target a decision to *continue* litigation after it was revealed a lack of probable cause was to encourage attorneys to voluntarily dismiss lawsuits they discover to be meritless after filing. (*Zamos*, *supra*, 32 Cal.4th at p. 969.) Holding attorneys liable after they promptly and voluntarily dismiss a lawsuit discovered to be meritless would create the opposite incentive. We do not conclude dismissing a lawsuit necessarily relieves an attorney of liability for having continued litigation without probable cause. However, we do reject the suggestion that a voluntary dismissal itself warrants an inference that the attorney had concluded the claim was without merit even earlier but continued to litigate for an improper purpose. More evidence that the attorney acted from with an improper purpose is required. Such evidence was present in *Zamos* but is not present in this case.

Shontz also argues the trial court abused its discretion by failing to consider the opposition, ignoring the standard for resolving anti-SLAPP motions, and considering the

14

evidence submitted by Reid & Hellyer. These arguments are devoid of merit. On a silent record, we presume the trial court acted correctly (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564), and Shontz has provided no reason to think the trial court proceeded in an improper manner. In any event, our review of the trial court decision is de novo, which means we stand in the shoes of the trial court and make the same determination based on the same record, which includes all the evidence Shontz put forward for establishing malice. (*Zamos*, *supra*, 32 Cal.4th at p. 965.)

Shontz faults the trial court for failing to make express reference to the opposition to the anti-SLAPP motion or his declaration as evidence of malice. He contends the trial court should have addressed his "sworn declaration and incorporation of the facts stated in the Memorandum by reference" which "*might* be considered *evidence* which a trial court *should* read and consider in ruling on a SLAPP motion."

We conclude, as we presume the trial court did, that the declaration (including the factual claims made in the memorandum) adds no evidence of malice. The two-page declaration itself focuses on the documents Shontz asked the court to judicially notice and the financial injuries he claims to have suffered due to the protraction of the litigation. It also purports to "incorporate the factual statements in the preceding Memorandum" and attests to their truth, though without identifying the statements. Our review of the memorandum discloses Shontz conceded the broad factual outlines in attorney Swan's declaration. Beyond those basic facts about the history of the litigation in January 2022, the memorandum contains only legal conclusions on the topic of malice,

15

not factual statements. Thus, in the section entitled "Malice is shown," the memorandum makes the following statements: (1) "Malice is shown by being initiated solely for the purpose of depriving the opponent of a beneficial use of property, which is what [the first unlawful detainer lawsuit] was all about"; (2) "Continuing [the litigation] until the eve of trial was brinksmanship, intended to scare Plaintiffs into giving up with the ominous trial looming"; (3) "The lack of probable cause to continue was ignored in favor of scaring Plaintiffs into giving up without a trial, using fear to manipulate Plaintiffs rather than a lawful basis for the action." Absent from the memorandum and the entire record is any evidence that could make it reasonable for a factfinder to reach these conclusions.

### III

### DISPOSITION

We affirm the judgment. Respondents are entitled to their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL_____
J.

We concur:

RAMIREZ_____
P. J.

MILLER_____
J.

16