Filed 7/15/22  Elliott v. Maland CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| MARA W. ELLIOTT,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ELIZABETH MALAND, as City Clerk, etc., et al.,<br><br>    Defendants;<br><br>CORY BRIGGS,<br><br>    Real Party in Interest and Appellant. | D078935<br><br><br>(Super. Ct. No. 37-2020-00027796-CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Briggs Law Corporation and Janna M. Ferraro for Real Party in Interest and Appellant.

Mara W. Elliott in pro. per. for Plaintiff and Respondent.

Cory Briggs appeals a judgment wherein he was awarded $5,081.25 after the superior court granted, in part, his motion to strike a complaint

under Code of Civil Procedure[1] section 425.16, the anti-SLAPP (strategic lawsuit against public participation) statute. He claims the court erred in reducing the fees awarded. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Briggs ran against incumbent City Attorney Mara W. Elliott in the 2020 general election. On August 7, 2020, months before the November 3d general election, Elliott filed a petition for a writ of mandate, naming the San Diego City Clerk and the San Diego County Registrar of Voters as respondents but Briggs as the real party in interest and defendant. The petition was aimed at two alleged wrongs. First, Briggs listed his profession as "ATTORNEY/TAXPAYER ADVOCATE" in his ballot designation, which Elliott claimed was "false, misleading, or inconsistent with the provisions of law." Second, Elliott claimed Briggs's statement of economic interests (Form 700) inaccurately listed three public entities as his sources of income. The first three causes of action in the petition were focused on the former alleged wrong while the last three causes of action concerned the latter.

Because Elliott's petition was filed under Election Code section 13314, subdivision (a)(3), it was given "priority over all other civil matters." (Elec. Code, § 13314, subd. (a)(3).) The trial court set a hearing on the petition for a writ of mandate for August 26, 2020, and set an expedited briefing schedule. Elliott filed her opening brief in support of the petition on August 14. Seven days later, Briggs filed an opposition as well as a motion to disqualify Elliott's

[1]    Statutory references are to the Code of Civil Procedure unless otherwise specified.

2

counsel.[2]  Elliott filed a reply on August 24.  The next day, Briggs filed an anti-SLAPP motion, which was scheduled to be heard on November 20.

On August 26, 2020, the superior court heard oral arguments on Elliott's petition for a writ of mandate.  After considering the arguments (both oral and written) as well as the evidence presented, the court denied the petition concerning the first three causes of action challenging Briggs's listing of his occupation as "ATTORNEY/TAX ADVOCATE" in the ballot materials.  However, the court held the fourth through sixth causes of action in abeyance.  Apparently, the court followed Briggs's suggestion and instructed Elliott to make a complaint to the Fair Political Practices Commission (Commission) under Government Code section 91003, subdivision (a).[3]

On September 18, the Commission informed Briggs that Elliott had filed a complaint against him.  The complaint alleged that the Form 700 Briggs filed, claiming that the City of San Diego (City), San Diego Unified School District (District), and San Diego County Office of Education (Office of Education) were sources of income for him, was false.  In reality, the City, the District, and the Office of Education were defendants in lawsuits that paid settlements to clients of Briggs's law firm.

On October 9, 2020, Briggs filed an amended Form 700, listing San Diegans for Open Government and California Taxpayers Action Network as

[2]    The court denied, without prejudice, Briggs's ex parte application to file a motion to disqualify Elliott's counsel and have that motion heard before the merits hearing on the petition for a writ of mandate.

[3]    Elliott also filed a complaint with the San Diego Ethics Commission. There is no indication in the record that entity contacted Briggs about the complaint.

his sources of income over $10,000 and indicating that the City had paid San Diegans for Open Government as part of a litigation settlement, the District had paid that same entity as part of a court order, and the Office of Education had paid California Taxpayers Action Network as part of a litigation settlement. Based on the filing of the amendment, on November 20, the San Diego Ethics Committee informed Elliott's counsel that it was dismissing Elliott's complaint against Briggs.

On November 24, 2020, the court issued a minute order, among other things, continuing the anti-SLAPP motion because Briggs did not request attorney fees. The hearing on the anti-SLAPP motion and motion for attorney fees was continued until February 26, 2021.

On December 15, 2020, the Commission sent a letter to Briggs, explaining that it had completed its review of the facts of Elliott's complaint against him, noting that it found that Briggs, in his Form 700 filed on December 3, 2019, had "initially disclosed the defendants [the City, the District, and the Office of Education], and not the clients of [his] law firm [he] represented in these lawsuits[ ]. . . . [as] single sources of income of $10,000 or more[.]" The Commission further illuminated:

> "Your actions violated the [Political Reform] Act [of 1974] because you failed to timely disclose the firm's clients as the sources of income to your law firm, the Briggs Law Corporation, on your Candidate [Form 700]. However, since you filed an amendment immediately after being contacted by the Enforcement Division to correct the information, filed the amendment prior to the November 3, 2020 General Election and have no prior history of violating this action of the Act, we are closing this case with the attached warning letter rather than issuing a fine."

On February 2, 2021, Briggs filed a renewed anti-SLAPP motion, which was almost identical to his previously filed motion except that the renewed

motion included a new section on attorney fees. Briggs requested $23,976.50 in attorney fees that included fees incurred as part of Briggs's attempt to disqualify Elliott's attorney.

In her opposition to Briggs's renewed anti-SLAPP motion, Elliott argued that Briggs improperly sought $13,805 in fees that he incurred for work unrelated to the anti-SLAPP motion. Elliott further argued that, at most, Briggs was entitled to half of the $10,162.50 attorney fees he incurred on the anti-SLAPP motion because he did not prevail in challenging the last three causes of action of the petition for a writ of mandate.

Briggs filed a reply wherein he argued his Form 700 was protected activity and that he was entitled to recover the attorney fees incurred from the motion to disqualify because it was "part and parcel to [his] defense against Elliott's meritless and harassing lawsuit."

During oral argument on the anti-SLAPP motion, Briggs's counsel took issue with the court's tentative ruling that Briggs did not provide any authority in his moving papers supporting his argument that the Form 700, on which the fourth through sixth causes of action were based, was protected conduct. As such, counsel stated that she wanted to refer the court to Briggs's "reply papers." The court asked Briggs's counsel to point out the evidence in Briggs's motion and related filings that supported counsel's argument. Counsel pointed to a footnote on page nine of the "reply papers where [they] point out that if the court was inclined to reduce the award based on the motion to disqualify, that it should—oh, I'm sorry, we're talking about—my apologies. I think I've confused a couple of things." Briggs's counsel did not point to any specific part of the motion in which it was argued that the completing and filing of Form 700 constituted protected activity. Rather, she represented that "the majority of the allegations in the petition"

5

were focused on "the ballot designation more so than the statement of economic interest[s]" and asserted the statement of economic interest[s] is protected conduct because it was part of Briggs's "run for public office."

Ultimately, the court was unpersuaded by Briggs's counsel's assertion. Accordingly, in its minute order, the court found that Briggs did not meet his initial burden as to the fourth through sixth causes of action in the petition because he did not show his Form 700 fits within a protected category. In awarding Briggs attorney fees, the court deducted the $13,805 in attorney fees incurred in connection with the motion to disqualify Elliott's counsel and then reduced the remaining amount because of Briggs's "partial success." In the end, the court awarded Briggs a total of $5,081.25.

The court entered judgment on April 16, 2021, wherein it decreed that Elliott would take nothing by way of her petition for mandate and ordered Elliott to pay Briggs $5,081.25 in attorney fees.

Briggs timely appealed.

DISCUSSION

Briggs frames the primary issue before us as only an appeal of the trial court's determination on attorney fees. Specifically, he argues the court erred when it did not determine that the filing of the Form 700 was protected conduct, and as such, the court should have awarded him attorney fees in connection with Elliott's fourth through sixth causes of action. In addition, Briggs insists the court erred by deducting the fees related to the disqualification motion for the total amount of attorney fees awarded. Briggs's first argument hinges on the court's evaluation of his anti-SLAPP motion. In essence, he argues the court should have granted the motion as to all six causes of action, not just the first three. We will address this issue first.

6

# I

## THE ANTI-SLAPP MOTION

### A. The Law

"Enacted by the Legislature in 1992, the anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' " (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883-884 (*Wilson*).)

"A court evaluates an anti-SLAPP motion in two steps. 'Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least "minimal merit." ' [Citation.] If the plaintiff fails to meet that burden, the court will strike the claim." (*Wilson*, *supra*, 7 Cal.5th at p. 884.)

"The defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute. A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' [Citation.] To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] Courts then must evaluate whether the defendant has

7

shown any of these actions fall within one or more of the four categories of ' "act[s]" ' protected by the anti-SLAPP statute." (*Wilson*, *supra*, 7 Cal.5th at p. 884.)

The second step of the anti-SLAPP analysis has been described as a summary-judgment-like procedure. (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940 (*Sweetwater Union*).) The court determines whether " 'the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment.' " (*Ibid*.) The plaintiff " 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.' " (*Ibid*.) The defendant may submit evidence in support of its motion. (*1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 585.) However, " '[t]he court does not weigh evidence or resolve conflicting factual claims.' " (*Sweetwater Union*, at p. 940.) Rather, the court " 'accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] "[C]laims with the requisite minimal merit may proceed." ' " (*Ibid*.)

We review an order granting an anti-SLAPP motion de novo. (*Sweetwater Union*, *supra*, 6 Cal.5th at p. 940.) We therefore engage in the same two-step process that the trial court undertakes in assessing an anti-SLAPP motion. (See *Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1651-1652.) "Only a [claim] that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

## B. Analysis

Here, the trial court found that "Briggs did not provide any authority within his moving papers supporting that his statement of economic interest[s] (i.e., Form 700) fits within a protected category. He thus did not carry his initial burden as to the fourth through sixth causes of action." In his opening brief, Briggs, in addressing causes of action four through six, spends four pages explaining why the filing of the Form 700 is protected conduct under the anti-SLAPP statute. However, he only devotes a single footnote to address the trial court's conclusion that Briggs did not carry his initial burden under the anti-SLAPP statute to show that causes of action four through six arose from protected activity. In that footnote, he cites to the record where he claims that he "put forth evidence and authority that his [Form 700] was 'conduct in furtherance of exercising a constitutional right of petition or free speech in connection with a public issue or an issue of public interest.' " Yet, his citation is to his reply in support of his renewed anti-SLAPP motion, which was filed on February 19, 2021 and was the last document filed in support of his anti-SLAPP motion.

Before filing this reply, Briggs had several opportunities in filings with the court to make the argument that the conduct giving rise to the fourth through sixth causes of action (the filing of the Form 700) was protected conduct under the anti-SLAPP statute. For example, in the memorandum of points and authorities in support of the anti-SLAPP motion (which Briggs filed on August 25, 2020), Briggs dedicated two and a half pages explaining why the conduct giving rise to Elliott's petition was protected under the anti-SLAPP statute. However, in doing so, Briggs only discussed his ballot designation, focusing on what he was permitted to list as his occupation. Briggs did not argue the filing of his Form 700 also was protected conduct.

9

On November 13, 2020, Briggs filed a reply in support of his anti-SLAPP motion. Again, he neglected to explain why the Form 700 was protected conduct. Rather, he focused on the ballot designation, "the filing of Briggs's ballot designation was a protected activity, both as a matter of political speech and as a matter of petitioning the government."[4]

On February 2, 2021, Briggs had another opportunity to argue the filing of the statement of economic interests was protected activity when he filed his memorandum of points and authorities in support of his renewed anti-SLAPP motion. Yet, Briggs admitted that his memorandum was "substantively identical to the one previously filed in support of Briggs's anti-SLAPP motion except for the addition of Section V below[,]" which pertained to attorney fees.

Therefore, it appears from the record before us that the first time Briggs argued that the filing of the Form 700 was protected conduct was in the second reply he filed in support of the anti-SLAPP motion, almost six months after he filed the original motion. It is established that the trial court has broad discretion to disregard legal arguments or other matter not presented in a party's moving papers. (See, e.g., *Plenger v. Alza* Corp. (1992)

---

[4] In the opening brief here, Briggs cites to his declaration he filed in support of his renewed anti-SLAPP motion wherein he declares: "I also explain that my Statement of Economic Interests filed with the City Clerk in connection with the November election is accurate and reflects the true sources of my income." This portion of Briggs's declaration seems to be focused on the second prong of the anti-SLAPP test, that Elliott could not prevail on her claims. It is not an explanation that the filing of the Form 700 is a protected activity. Nor does it include any legal authority to support such an assertion. Finally, at oral argument on the anti-SLAPP motion, when asked what evidence supports Briggs's argument that the fourth through sixth causes action arose from protected conduct, Briggs's counsel did not point the court to this declaration.

11 Cal.App.4th 349, 362, fn. 8 [inclusion of new evidentiary matter with the reply should only be allowed in exceptional cases]; *San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 310 [summary judgment reversed because trial court erred in considering evidence first submitted with the reply]; *Alliant Ins. Services, Inc. v. Gaddy* (2008) 159 Cal.App.4th 1292, 1308 [trial court had discretion in preliminary injunction proceeding to determine whether or not to accept new evidence with reply papers]; *Padron v. Watchtower Bible & Tract Society of New York, Inc.* (2017) 16 Cal.App.5th 1246, 1267 [same rule applies at the appellate level so as to preclude new arguments from being introduced in an appellant's reply brief].) Here, we conclude the court did not abuse its discretion in disregarding legal arguments made for the first time in Briggs's reply in support of his renewed anti-SLAPP motion. As such, we agree with the trial court that "Briggs did not provide any authority in his moving papers supporting that his statement of economic interest[s] (i.e., Form 700) fits within a protected category. He thus did not carry his initial burden as to the fourth through sixth causes of action."

In addition, we reject Briggs's contention that there was no need for him to argue the filing of Form 700 was protected activity because Elliott never challenged this point and/or conceded the assertion. First, it appears the trial court did not find that Elliott conceded this issue. Further, we observe that the trial court considered the merits of the petition for a writ of mandate as well as the anti-SLAPP motion and had opportunities to extensively consider the arguments and evidence submitted by the parties. Again, the trial court did not conclude that Elliott conceded this point. Second, when questioned by the court about the support for Briggs' argument that the filing of Form 700 was protected activity, Briggs's counsel did not

11

respond that Elliott had conceded that it was. Instead, counsel pointed the court to the reply in support of the renewed anti-SLAPP motion but admitted to confusing "a couple of things." In other words, Briggs's counsel did not argue below that Elliott conceded that the filing of Form 700 was protected activity. Consequently, we do not consider that argument here. (See *Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591 [" '[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court' "].)

Finally, we are not persuaded by Briggs's argument in his reply brief that we must follow *Exline v. Gillmor* (2021) 67 Cal.App.5th 129 (*Exline*) and determine that the filing of Form 700 was protected activity.[5] In that case, a constituent brought an action against the mayor, alleging that she violated the Political Reform Act of 1974 by failing to disclose on Form 700 filings, her interest in, and income she received from, an entity called Public Property Advisors. The mayor brought an anti-SLAPP motion. The constituent argued that his complaint fell under the public interest exemption codified in

---

[5] We observe that Briggs did not cite or discuss *Exline*, *supra*, 67 Cal.App.5th 129 in his opening brief. However, three days after filing the opening brief, Briggs's counsel submitted a letter indicating that she had not included *Exline* in the opening brief "because it was only recently brought to [her] attention." Although certainly a recent case, the opinion in *Exline* had been issued on July 29, 2021, more than two months before the opening brief was filed.

section 425.17, subdivision (b).[6] The trial court granted the mayor's motion. (*Exline*, at p. 134.)

In affirming the order, the appellate court concluded that the Form 700 filing fell under an exception to the public interest exemption. (*Exline*, *supra*, 67 Cal.App.5th at p. 134.) Further, the appellate court determined that the filing of a Form 700 "is political in nature" (*id*. at p. 141) and constitutes "political *work*" within the meaning of section 425.17, subdivision (d)(2). (*Exline*, at p. 142.) However, the court made clear that it was not reviewing the trial court's conclusion that the subject cause of action arose out of protected activity. (*Id*. at p. 134.)

Here, unlike in *Exline*, the issue before us is not whether Briggs's filing of the Form 700 falls within section 425.17, subdivision (d)(2)'s exception to the public interest exemption to the anti-SLAPP law. Rather, the issue before us is whether the court correctly determined that Briggs did not carry his burden in showing the fourth through sixth causes of action arose from protected activity. *Exline* is not helpful on that issue. (See *Exline*, *supra*, 67 Cal.App.5th at p. 134.) As such, we find that case not instructive here.

---

[6]     Per section 425.17, subdivision (b), the anti-SLAPP statute "does not apply to any action brought solely in the public interest or on behalf of the general public if all of the following conditions exist: [¶] (1) The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member. A claim for attorney's fees, costs, or penalties does not constitute greater or different relief for purposes of this subdivision. [¶] (2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons. [¶] (3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter."

13

It is clear under anti-SLAPP analysis that a defendant has the initial burden to identify the activity on which each challenged claim rests and demonstrate that the activity is protected by the anti-SLAPP statute. (*Wilson*, *supra*, 7 Cal.5th at p. 884.)  This burden required Briggs to show, in his moving papers below, that the fourth through sixth causes of action were based on protected conduct.  It appears that those three causes of action were based on an allegedly improper Form 700 filed by Briggs.  Briggs, however, did not argue that the filing of Form 700 was protected conducted under the anti-SLAPP statute until he filed the reply in support of his renewed anti-SLAPP motion.  The trial court was well within its discretion to ignore a new legal argument raised in a reply.  (See *Plenger v. Alza* Corp., *supra*, 11 Cal.App.4th at p. 362, fn. 8; *San Diego Watercrafts, Inc. v. Wells Fargo Bank*, *supra*, 102 Cal.App.4th at p. 310; *Alliant Ins. Services, Inc. v. Gaddy*, *supra*, 159 Cal.App.4th at p. 1308.)

Moreover, although we acknowledge that we review an order denying or granting an anti-SLAPP motion de novo (*Sweetwater Union*, *supra*, 6 Cal.5th at p. 940), that standard of review does not provide an appellant with another bite of the proverbial apple to make an alternative strategic decision on appeal or correct an oversight or mistake below.  Simply put, we agree with the trial court that Briggs did not argue in his moving papers that the fourth through sixth causes of action arose from protected activity.  Our standard of review here does not provide him with an avenue to address this mistake.  It merely allows Briggs the opportunity to show how the trial court

14

erred in partially denying his anti-SLAPP motion. He has not done so on the record before us.[7]

## II

## THE ATTORNEY FEE AWARD

### A. Relevant Law

In general, an award of attorney fees and costs is mandatory when a defendant prevails on an anti-SLAPP motion. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131 (*Ketchum*) [a "SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees"]; see § 425.16, subd. (c)(1) [providing in part, "in any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs"].) By its express terms, the anti-SLAPP statute "is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in

---

[7] Additionally, it is not clear to us on this record that the anti-SLAPP motion should have been granted as to the fourth through sixth causes of action even had Briggs carried his initial burden as to those claims. Per Briggs's suggestion, the trial court held the fourth through sixth causes of action in abeyance and recommended that Elliott file a complaint with the Commission. Elliott did so, and the Commission sent Briggs a letter about the complaint. In response to the letter, Briggs submitted an amended Form 700 to clarify that the City, the District, and the Office of Education were not sources of his income, but instead, entities that paid his client a litigation settlement. In filing this amended Form 700, Briggs addressed the very wrongs Elliott alleged in the fourth through sixth causes of action in the petition for a writ of mandate. Indeed, in her prayer for relief, Elliott asked the court to issue injunctive relief ordering Briggs to correct his Form 700 to accurately disclose his true sources of income. This is precisely what Briggs did. Therefore, it does not appear that the fourth through sixth causes of action are the type of harassing, unmeritorious claims the anti-SLAPP issue was meant to combat. (See *Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315.)

extricating herself from a baseless lawsuit." (*Wilkerson v. Sullivan* (2002) 99 Cal.App.4th 443, 446; see § 425.16, subd. (a) [providing the anti-SLAPP statute "shall be construed broadly"].)

Therefore, anti-SLAPP fee awards "should be fully compensatory" and, "absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent*, including those relating solely to the fee." (*Ketchum, supra*, 24 Cal.4th at p. 1133.) However, the defendant may recover fees and costs only for the special motion to strike, and not for the entire litigation. (*S.B. Beach Properties v. Berti* (2006) 39 Cal.4th 374, 381.)

Although a fee award under section 425.16 is mandatory, the trial court possesses broad authority to determine the reasonable amount of attorney fees. (*Ketchum, supra*, 24 Cal.4th at p. 1131; *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*Drexler*) [the experienced trial judge is the best judge of the value of the professional services rendered for cases in the court's community].) Our high court has approved the use of the lodestar method for anti-SLAPP fee awards. (*Ketchum*, at pp. 1131-1132; see *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 395.) The lodestar tabulation consists simply of "the reasonable hours spent, multiplied by the hourly prevailing rate for private attorneys in the community conducting noncontingent litigation. . . ." (*Ketchum*, at p. 1133, italics omitted.)

We review an anti-SLAPP fee award for abuse of discretion, and the trial court's fee determination " ' "will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' " (*Ketchum, supra*, 24 Cal.4th at p. 1132.) "Accordingly, there is no question our review must be highly deferential to the views of the trial court." (*Nichols v. City of Taft* (2007) 155

16

Cal.App.4th 1233, 1239.) In assessing an attorney fee award, we resolve conflicts in the evidence in favor of the prevailing party, and the trial court's resolution of any factual issue is conclusive. (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1322 [noting an attorney fee dispute "is not exempt from generally applicable appellate principles"].)

### B. Analysis

As the prevailing party under the anti-SLAPP statute, Briggs requested a total of $23,976.50 in attorney fees, $13,805 of which related to Briggs's motion to disqualify Elliott's counsel, which the court did not award. Thus, absent those fees, Briggs asked for $10,162.50 in fees related solely to his anti-SLAPP motion. The court reduced this amount to $5,081.25 because Briggs's was only partially successful with his anti-SLAPP motion. Briggs challenges both reductions of the attorney fee awarded.

Briggs argues that the court should have awarded the additional $13,805 in fees incurred for the motion to disqualify Elliott's counsel. To this end, he contends that the fees for work on the disqualification motion were "inextricably intertwined" with the "factual and legal basis" of the anti-SLAPP motion. Further, Briggs points out that he alerted the trial court to a possible conflict of interest and attempted to get the court to hear the disqualification motion before it addressed the merits of the petition for mandate. However, the court denied his request without prejudice. Thus, Briggs asserts that he was forced to bring his motion to disqualify Elliott's counsel as he was defending against the petition for a writ of mandate. And, because of the expedited nature of the petition, he incurred the fees for the disqualification motion before his anti-SLAPP motion could be heard.

The trial court was aware of the pace of litigation as well as the issues raised in the petition for a writ of mandate, the motion to disqualify, and the

anti-SLAPP motion. It was unconvinced that the issues in the disqualification motion were inextricably intertwined with the issues in the anti-SLAPP motion. In addition, the court was personally aware of Elliott's counsel's litigation efforts and was in a better position than this court to determine what additional legal efforts partaken by Briggs's counsel were necessary to extract Briggs from the lawsuit. On this record, we conclude that Briggs has not shown that the trial court abused its discretion in reducing his requested attorney fees by the amount incurred to file the motion to disqualify Elliott's counsel.

Next, Briggs argues the trial court improperly reduced the fees he incurred on the anti-SLAPP motion because it erroneously concluded that he was only partially successful. As we discussed *ante*, we reject this contention. Consequently, the foundation on which Briggs's attacks the reduction of the fees incurred on the anti-SLAPP motion crumbles.

Further, we conclude the trial court properly exercised its broad discretion in applying the lodestar method and determining the amount of the attorney fees. (See *Ketchum, supra*, 24 Cal.4th at p. 1131; *Drexler, supra*, 22 Cal.4th at p. 1095.) Here, the court concluded that Briggs was only partially successful in bringing his anti-SLAPP motion. Therefore, the court appropriately reduced the requested fees to correlate with his limited success. (See *Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 342 [in determining lodestar amount, a party generally may not recover for work on causes of action on which the party was unsuccessful].) Below, the trial court determined that Briggs's anti-SLAPP motion was only successful as to half the causes of action. As such, it was reasonable that the court reduced the fees incurred on the motion by half.

In short, on this record, we cannot say the trial court's anti-SLAPP fee award in favor of Briggs was "clearly wrong." (See *Ketchum, supra*, 24 Cal.4th at p. 1132; *Drexler, supra*, 22 Cal.4th at p. 1095.)

## DISPOSITION

The judgment is affirmed. Elliott is entitled to her costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:


O'ROURKE, J.


IRION, J.