Filed 10/3/25  Redwood City Income Partners v. Evernote Corp. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| REDWOOD CITY INCOME PARTNERS LLC,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>EVERNOTE CORPORATION,<br><br>　　　Defendant and Appellant. | A169906<br><br>(San Mateo County<br>Super. Ct. No. 22CIV04109) |

　　　Evernote Corporation appeals from the trial court's order denying its special motion to strike claims by its landlord, Redwood City Income Partners LLC, under Code of Civil Procedure section 425.16 (the anti-SLAPP law).[1] We agree with the trial court that Redwood's claims " ' "arise from' " and are " 'based on" ' " Evernote's settlement of litigation with its subtenant, Neutron Holdings, Inc., d/b/a Lime, "making them subject to the provisions of the anti-SLAPP statute" under the first step of the analysis.  (*O&C Creditors Group, LLC v. Stephens & Stephens XII, LLC* (2019) 42 Cal.App.5th 546, 567 (*O&C*).)  But we must disagree that Redwood demonstrated a probability of prevailing on its claims as required by the second step.  (See *id.* at p. 566.)

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

1

The trial court correctly determined Redwood's claims for breach of contract and related causes of action in its amended complaint arise from a single theory: Evernote's settlement modified or amended Lime's sublease without required consent from Redwood. But Evernote's lease and related contracts do not require Redwood's consent to every modification or amendment to a sublease, just to a "subsequent" or "further" subletting. The settlement is neither a "subsequent" nor "further" sublease. Redwood's contrary construction is unsupported by the evidence and is foreclosed as a matter of law. And it is far too late for Redwood to offer new theories of breach now. "There is no such thing as granting an anti-SLAPP motion with leave to amend." (*Dickinson v. Cosby* (2017) 17 Cal.App.5th 655, 676 (*Dickinson*).) "[A]nti-SLAPP is designed as a final remedy with no second chances." (*Id.* at p. 679.)

Accordingly, we reverse and direct the trial court to enter an order granting Evernote's anti-SLAPP motion.

## I. BACKGROUND

### A. *The Lease and Related Agreements*

In 2012, Evernote leased an office building in Redwood City from Redwood's predecessor for a period of ten years. The lease allowed Evernote to sublease the premises with the landlord's consent. If Evernote subleased any space for more than the rent it owed, the landlord was entitled to half of the "[a]dditional" or "[b]onus" rent, less Evernote's transaction costs.

Evernote subleased one floor of the building to Lime in 2018. Redwood consented to the sublease in a document executed by Redwood, Evernote, and Lime. A few months later, Evernote subleased an additional floor to Lime, which Redwood approved in a second consent to sublease substantively identical to the first one.

2

In 2020, Lime defaulted on the sublease and Evernote sued to recover past due rent and late fees. Redwood knew about this lawsuit because it responded to a subpoena from Lime, but never sought to intervene. Evernote and Lime reached a settlement, and Evernote dismissed the action against Lime with prejudice.

Three months after Evernote filed a notice of settlement in its action against Lime, Redwood advised Evernote it had violated section 5 of the consent to sublease by "enter[ing] into an agreement to terminate the Sublease" without Redwood's approval of this "modification" of the sublease. Redwood noted that its interest in "payments pursuant to the Sublease" entitled it to bonus rent payments under the lease. Over a year later, Redwood said Evernote was in default because section 5 of the consent to sublease required Redwood's permission to terminate the sublease, and any "termination payment" Evernote received was "excess rent" Redwood was entitled to share per the lease. Evernote responded that the settlement was neither a modification nor amendment to the sublease and did not result in excess rent because Evernote received less from the settlement than the rent owed Redwood under the lease.

## B. Proceedings In The Trial Court

In 2022, Redwood filed this action against Evernote and Lime for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief. In its original complaint, Redwood alleged both defendants breached the lease and consent to sublease "by . . . failing to disclose the details" of their settlement to Redwood, "making it impossible [for Redwood] to determine how much" additional rent it was entitled to per the lease.

3

Evernote sent Redwood a copy of the settlement in December 2022. It then answered Redwood's original complaint and filed a cross-complaint. Lime filed an anti-SLAPP motion, prompting Redwood to dismiss its claims against Lime without prejudice. Meanwhile, Redwood and Evernote stipulated to allow Redwood to file an amended complaint and Evernote to "challenge" the amended complaint "on its merits" without objection by Redwood "to Evernote's responsive pleadings(s) as untimely."

Redwood filed the operative first amended complaint in March 2023, asserting the same causes of action as its original complaint but changing its theory of liability. Now, Redwood alleged that Evernote breached the lease "by allowing Lime to pay" something "differe[nt] from the consideration required" by the sublease, without Redwood's consent to "this modification and/or amendment" to the sublease as "required under Section 5 of the Consent." Evernote's breach prevented Redwood from "understanding and asserting" its rights to additional rent and caused it to "los[e] its income stream from the Sublease." While the original complaint had expressly described Evernote's litigation and settlement with Lime, the amended complaint omitted any such reference. Even so, it alleged that Evernote's breach occurred on the date the settlement was executed, making it clear the settlement was the vehicle by which Redwood claimed Evernote had modified or amended the sublease.

Lime filed another anti-SLAPP motion and Redwood again dismissed its claims against Lime, this time with prejudice. Evernote also filed an anti-SLAPP motion. Redwood opposed Evernote's motion as untimely and on its merits, arguing its claims did not arise from activity protected under the anti-SLAPP statute and were likely to succeed.

After a hearing, the trial court denied Evernote's motion. The court found the motion was timely per the parties' stipulation. It also found Evernote met its initial burden to show Redwood's claims arose from conduct protected under the anti-SLAPP statute.

In the second step of the analysis, the trial court determined it must analyze Redwood's claims "as they are pled" and found Redwood asserted "a single theory of breach of contract- namely, Evernote's alleged breach of Sect. 5 of the Consent to Sublease by 'amending'/'modifying' the Sublease without [Redwood]'s consent." The court declined to consider theories that Evernote failed to make payments required by the lease or by a spreadsheet exchanged between the parties that Redwood submitted with other evidence because they were first asserted in Redwood's opposition brief, and were not alleged in the amended complaint.

"Without parsing through each of Evernote's arguments," the trial court concluded that "[v]iewing the contract language collectively, . . . arguably, reasonable minds could differ as to whether the agreement(s) prohibit Evernote from changing Lime's payment obligations without [Redwood]'s consent." In the court's view, evidence that Redwood and Evernote "extensively discussed the amount of 'overage' that Lime would be required to pay" before Redwood consented to the sublease showed "Lime's contractual payment obligations were presumably a key provision in the Sublease." The court was unpersuaded by Evernote's characterization of the settlement as a termination of the sublease rather than a modification or amendment. It observed, "This is not a situation where Lime was current on its payments" and Evernote "terminated the Sublease." "Rather, Lime owed a specific amount of back- rent, some of which belonged to [Redwood]."

5

Allowing that "Evernote may or may not have the better argument" in the end, the court found Redwood's claims did not "fail as a matter of law."

## II. DISCUSSION

Evernote claims its agreements with Redwood are unambiguous and did not require it to obtain Redwood's consent to settle with Lime for a different amount of rent than the sublease required. Redwood defends the trial court's ruling, on the basis that its claims have the requisite minimal merit to proceed. And Redwood urges additional grounds that support the court's ruling. Evernote's motion was untimely, and it should have been rejected at the first step of the anti-SLAPP analysis because Redwood's claims do not arise from protected activity.

In addressing these issues, we focus on Redwood's claim for breach of contract as alleged in its amended complaint. The trial court determined, and the parties do not dispute, that Redwood's other claims target the same underlying conduct and are subject to the same analysis.[2] (See *Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 896 (*Medical Marijuana*) [derivative claims stood or fell together in anti-SLAPP analysis where plaintiff failed to allege they arose from different conduct].) And as we will discuss, the amended complaint sets the boundaries of our anti-SLAPP

---

[2] Redwood forfeited any argument that a different analysis applies to these claims by failing to present such argument or analysis in its appellate brief. (See *Six4Three, LLC v. Facebook, Inc.* (2025) 109 Cal.App.5th 635, 649.)

6

analysis.  (See *id.* at p. 893.)  We must disregard possible breaches that were not alleged in the amended complaint.

## A.  *The Anti-SLAPP Statute and Our Standard of Review*

The anti-SLAPP law helps "combat lawsuits designed to chill the exercise of free speech and petition rights."  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060 (*Park*).)  It provides that claims arising from an act "in furtherance of [a] person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike," unless the plaintiff establishes "a probability . . . [of] prevail[ing] on the claim."  (§ 425.16, subd. (b)(1).)

We review the trial court's ruling on an anti-SLAPP motion de novo.  (*Park, supra,* 2 Cal.5th at p. 1067.)  There are two steps to the analysis.  First, the moving party "must establish that the challenged claim arises from activity protected by" the statute.  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).)  Only "[i]f the defendant makes the required showing" does "the burden shift[] to the plaintiff to demonstrate the merit of the claim" in "a 'summary-judgment-like procedure.' " (*Ibid.*)

In the second step, the plaintiff must submit admissible evidence to sustain its burden.  (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 946.)  "Unverified allegations in the pleadings or averments made on information and belief cannot make the showing."  (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1289; see also *Sweetwater Union High School Dist., supra,* 6 Cal.5th at p. 948.)  If the plaintiff needs discovery to meet this burden, the statute authorizes it "on noticed motion and for good cause shown."  (§ 425.16, subd. (g).)

## B. Timeliness

Redwood claims Evernote's motion was untimely because Evernote did not bring an anti-SLAPP motion in response to the original complaint, and the 60-day deadline established by the statute (§ 425.16, subd. (f)) should be interpreted "to prohibit belated motions that could have been brought earlier." (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 645.)

We disagree. Redwood's amended complaint asserts a different theory of liability than its original complaint. " 'An amended complaint reopens the time to file an anti-SLAPP motion' " if it " 'adds new allegations that make previously pleaded causes of action subject to an anti-SLAPP motion.' " (*Newport Harbor Ventures, supra,* at pp. 641, 646.) That is what happened here. Besides, the trial court has "discretion to permit a late motion." (*Id.* at p. 645.) Even if Evernote's motion had been untimely, the trial court would not have abused its discretion to consider it given the early stage of the litigation and the parties' stipulation to reopen the pleadings.

## C. The First Step of the Analysis

In the first step of the anti-SLAPP analysis, the moving party must "identify what acts each challenged claim rests on" and "show how those acts are protected under a statutorily defined category of protected activity." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).) "[A] claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park, supra,* 2 Cal.5th at p. 1060; *Baral, supra,* 1 Cal.5th at p. 394.)

Evernote contends that Redwood's claims arise directly from its settlement with Lime, and we agree. While the amended complaint omits

8

explicit reference to the settlement, it is clear the breach Redwood alleges on the date of the settlement was, in fact, Evernote's agreement to settle "allowing Lime to pay consideration to Evernote that differed from" that required by the sublease.  As our high court has explained, "[a] breach of contract claim can arise from protected activity if the action allegedly breaching the contract is itself protected." (*Bonni, supra,* 11 Cal.5th at pp. 1025–1026.)  That is exactly what happened here.  Redwood does not dispute that litigation settlements are protected under the anti-SLAPP statute. (*Ibid.*; *O&C, supra,* 42 Cal.App.5th at pp. 566–567.)

*O&C, supra,* 42 Cal.App.5th 546, is squarely on point.  There, the appellant was the successor to a law firm that had represented insurance policy beneficiaries in a dispute with their insurer.  The appellant claimed it was entitled to part of the settlement, which instead directed the proceeds to the beneficiaries and their new counsel.  (*Id.* at pp. 553–556.)  The appellant claimed the insurer and its attorneys through the settlement had derogated the appellant's attorney fees lien on any recovery.  The insurer and counsel responded with an anti-SLAPP motion.  (*Id.* at pp. 565, 559.)  The trial court granted the motion and we affirmed, rejecting the appellant's attempts to avoid the anti-SLAPP statute by distinguishing alleged failures to disclose the settlement and " 'wrongful disbursement' of settlement funds" from the settlement itself.  (*Id.* at p. 567–569.)  As we explained, the appellant's claims were "founded upon and would not exist in absence of the protected settlement activity," and thus fell within the anti-SLAPP statute.  (*Id.* at p. 567.)

The same is true here.  Like the appellant in *O&C*, Redwood attempts to distinguish between Evernote's settlement with Lime and its alleged breach of the consent to sublease by wrongfully " 'allowing Lime to pay

9

consideration . . . differe[nt] from' " that required under the sublease without Redwood's consent.  But on the facts alleged here, the conduct is one and the same.  (See *Bonni, supra,* 11 Cal.5th at p. 1025 ["[a]lthough Bonni alleges fraud in the course of [settlement] negotiations, that allegation does not remove them from the definition of protected activity"].)  This reality is unaffected by Redwood's hypothetical discussion of ways in which Evernote could have breached the consent to sublease through a similar arrangement with Lime outside the settlement context.  Nor would it make any difference if Evernote had settled its potential claims against Lime before filing suit.  Prelitigation settlements are still "protected activity for anti-SLAPP purposes."  (*Id.* at p. 1024.)  Ultimately, Evernote's alleged breach of the consent to sublease cannot be cleaved from its settlement with Lime.  Redwood's claims arise from protected activity.

## D.  *The Second Step of the Analysis*

We turn to the second step of the anti-SLAPP analysis, requiring us to consider whether Redwood established its claims have " 'the requisite minimal merit' " to demonstrate a probability of success.  (*Olson v. Doe* (2022) 12 Cal.5th 669, 678–679 (*Olson*).)  In this step, "[t]he court does not weigh evidence or resolve conflicting factual claims.  Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment."  (*Baral, supra,* 1 Cal.5th at pp. 384–385.)  Still, where the meaning of contractual language does not turn on the credibility of extrinsic evidence and a claim for breach of contract "is foreclosed as a matter of law," the claim will not survive.  (*Olson, supra,* 12 Cal.5th at p. 679; *Cordoba Corp. v. City of Industry* (2023) 87 Cal.App.5th 145, 155–156 [anti-SLAPP motion properly

10

granted where contract was not reasonably subject to opposing party's interpretation].)

In evaluating Redwood's second-step showing, we will employ well-settled principles of contract interpretation. We seek "to ascertain the mutual intent of the parties solely from the written contract [if] possible," considering "the contract as a whole and interpret[ing] the language in context, rather than in isolation." (*West Pueblo Partners, LLC v. Stone Brewing Co., LLC* (2023) 90 Cal.App.5th 1179, 1185.) " ' "If contractual language is clear and explicit, it governs." ' " (*People v. Doolin* (2009) 45 Cal.4th 390, 413, fn. 17.) Where the meaning of language is disputed, the trial court provisionally receives any proffered extrinsic evidence " ' "relevant to show whether the contract is reasonably susceptible of a particular meaning." ' " (*West Pueblo, supra,* 90 Cal.App.5th at p. 1185.) If the court finds the language is reasonably susceptible to the interpretation urged, the evidence is then admitted to aid in interpreting the contract. (*Id.* at p. 1186.) " ' "The trial court's determination of whether an ambiguity exists is a question of law, subject to independent review." ' " (*Ibid.*)

1. *Relevant Contractual Language*

Section 15 of Evernote's lease allowed it to sublease the premises only with Redwood's "prior consent . . . in each instance, which consent shall not be unreasonably withheld, delayed or conditioned." Redwood's consent "to any . . . subletting shall not constitute a waiver of the necessity for obtaining [its] consent to any subsequent . . . subletting." If Evernote "receive[d] rent or other consideration, either initially or over the term of the . . . sublease, in excess of" its own rent, it owed Redwood half of that amount, less its transaction costs, as "[a]dditional" or "[b]onus" rent. Subletting would not relieve Evernote of its obligations under the lease, including its obligations to

11

pay rent and additional rent.  The lease listed several non-exhaustive grounds upon which Redwood could reasonably withhold consent to a sublease. They do not include the amount of rent a subtenant would pay or whether a sublease would entitle Redwood to additional rent.  The amended complaint does not allege that Evernote breached any of these provisions.

Redwood's consents to the Lime subleases contained additional terms. Redwood claims Evernote breached section 5 of those consents, which provided:

> This consent by Landlord shall not be construed as a consent by Landlord to any further subletting by Sublandlord or Subtenant . . ., whether or not the Sublease purports to permit the same . . . . This consent shall not be construed as a consent by Landlord to any modification, amendment, extension or renewal of the Sublease.  Sublandlord and Subtenant acknowledge and agree that the attempted exercise of any option to extend the term of the Sublease or to expand the Sublet Premises by the Subtenant shall, for purposes of the Master Lease and this Agreement, constitute a further subletting subject to the provisions of this Article [or section] 5.

Section 15 of the consents required Evernote and Lime, upon 15 days' notice, to provide Redwood with "a statement in writing certifying that the Sublease is unmodified and in full force and effect (or, if there have been modifications, that the Sublease is in full force and effect as modified and stating the modification)."  The statement was to specify "the dates to which" rent was paid and any default by either party to the sublease.  The "inten[t]" was "that any such statement . . . may be relied upon by Landlord and any prospective purchaser or lessee of the Building, or any Lender."

2.    *Analysis*

Notwithstanding Redwood's argument about unpled theories, we focus on the only theory of breach alleged in the amended complaint, which is the

theory that Evernote "fail[ed] to obtain [Redwood]'s consent to modify and/or amend the Sublease Agreement as required under Section 5 of the Consent."

The problem with this argument is that section 5 contains no such requirement for Redwood's consent. Section 5 is clear that Redwood's consent to the sublease "shall not be construed as a consent . . . to any modification, amendment, extension or renewal of the Sublease." But this disclaimer does not contain any affirmative obligation that Evernote obtain Redwood's consent to anything.

The only obligation relevant to this dispute arises from section 15 of Evernote's lease, which requires Redwood's consent to a "sublet," and clarifies that this includes a "subsequent . . . subletting." This is consistent with other language in section 5 of the consent: "[T]he attempted exercise of any option to extend the term of the Sublease or to expand the Sublet Premises by the Subtenant shall, for purposes of the Master Lease and this Agreement, constitute a further subletting subject to the provisions of this [section] 5." Section 5 of the consent makes it clear Redwood's consent does not apply to any such "further" subletting, "whether or not the Sublease purports to permit the same." Therefore, as required by *the lease*, Redwood still had to consent to any "subsequent" or further subletting, even if effected via an option purportedly granted by an earlier sublease approved by Redwood.

But Redwood does not claim that Evernote's settlement with Lime was a "subsequent" or "further" subletting, and this forward-looking language in section 5 unambiguously does not apply to settlement of claims arising from past breaches of an existing sublease. Given this conclusion, we need not resolve the parties' dispute over whether the settlement is exclusively a termination of the sublease or also a modification or amendment. Either

13

way, it is not a "subsequent" or "further" subletting to which Redwood must consent.

Redwood points to additional disclaimers in the consents that are consistent with section 5 but, like section 5, impose no affirmative requirement that Evernote obtain Redwood's consent to anything. Section 7 provides that "in no event shall Landlord be . . . bound by any amendment to the Sublease not consented to by Landlord." Section 10 provides that "[n]otwithstanding anything to the contrary contained in the Sublease, all requests . . . for Landlord's consent or approval must be made by [Evernote] on behalf of Subtenant." These disclaimers are consistent with section 5 as well as with section 1, which more broadly provides that Redwood's execution of the consents would not "operate as a consent to or approval or ratification by Landlord of any specific provisions of the Sublease" or modify the parties' obligations under the lease.

Redwood's discussion of section 15 of the consents is similarly unpersuasive. That section requires Evernote to provide Redwood, upon request, with a certification "that the Sublease is unmodified and in full force and effect (or, if there have been modifications, that the Sublease is in full force and effect as modified and stating the modification)." This language essentially requires Evernote to provide estoppel certificates when requested. It does not require Redwood's consent to any modification to the sublease. It only requires Evernote to disclose any modifications upon Redwood's request. Section 15 explains that this disclosure is intended to "be relied upon by Landlord and any prospective purchaser or lessee of the Building, or any Lender." This common requirement makes sense in situations where Redwood would not otherwise be aware of each and every modification to the

14

sublease because the leases and consents do not require every modification to be immediately disclosed to or approved by Redwood.

Finally, the extrinsic evidence Redwood submitted to the trial court does not support its interpretation of the consent. The evidence shows that, apparently in response to Evernote's request for consent to sublease an additional floor to Lime, which would be a subsequent or further subletting under the lease, Redwood requested "[a] calculation of the sublease profit sharing due to landlord" and other documents. Evernote provided a spreadsheet showing the expected monthly payments under the new sublease. As Evernote points out, this was required by section 15 of the lease, which specifies information to be furnished by Evernote should it seek to sublet the premises.

This exchange does not support Redwood's argument that by sending the spreadsheet, Evernote agreed to make the expected payments "*irrespective* of any default by Lime." In its request for the information, Redwood made no mention of what would happen if Lime defaulted. Moreover, Redwood does not contend that any of the contracts required Evernote to pay additional rent irrespective of a subtenant's default. And nothing in the evidence suggests the parties intended their exchange to amend their contracts or create new obligations between them. Redwood's argument that the spreadsheet was intended to "compensate [it] for consenting to the Sublease" contradicts the provisions of the lease, which do not allow Redwood to unreasonably withhold its consent or require Evernote to compensate Redwood for providing consent. Redwood's suggestion that it gave up an option to "recapture the Sublease space" in reliance on Evernote's promise to "hedge against" Lime's default is unsupported by "reasoned

15

argument, authority, [or] record citations" and thus forfeited. (*Coziahr v. Otay Water Dist.* (2024) 103 Cal.App.5th 785, 799.)

Again, the lease requires Evernote to compensate Redwood for additional rent it collects pursuant to a sublease only if Evernote actually "receives" such rent. The operative complaint does not allege that Evernote breached this obligation. Nor does it allege that the email and spreadsheet Redwood submitted modified the lease or the consents, or constituted a new agreement between the parties that Evernote breached.

The parties' agreements are clear, explicit, and unambiguous. The extrinsic evidence Redwood submitted does not demonstrate any ambiguity or support Redwood's allegation that section 5 of the consent to sublease required it to approve modifications or amendments to the sublease short of those that amount to a subsequent or further subletting. Redwood "has failed to show 'the requisite minimal merit' to 'proceed' on [its] breach of contract claim." (*Olson, supra,* 12 Cal.5th at p. 685.)

## E. Unpled Theories

Finally, Redwood argues that Evernote breached the parties' agreements in two other ways. It failed to pay Redwood additional rent to which it is entitled under the lease and it failed to disclose the amount of the settlement. Redwood alleged these theories in its original complaint but omitted them from the operative amended complaint. Regardless of why Redwood may have abandoned these allegations, like the trial court, we cannot consider theories of breach that were not alleged in the operative complaint.[3]

---

[3] To be clear, the amended complaint alleged the following in the factual background: "Lime paid Evernote an undisclosed amount of money that differed from the consideration due under the [parties' agreements].

Akin to summary judgment, the complaint "provides the outer boundaries of the issues that are to be addressed in an anti-SLAPP motion." (*Medical Marijuana, supra,* 46 Cal.App.5th at pp. 883, 893.) If "the proof presented" in opposition to the motion "actually established a probability of prevailing on the merits," a request to amend the complaint to conform to that proof might be supported. (*Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 821 (*Bergstein*).) But "a plaintiff whose complaint is stricken by a successful anti-SLAPP motion cannot try again with an amended complaint." (*Dickinson, supra,* 17 Cal.App.5th at p. 676.) Otherwise, the SLAPP lawsuit "becom[es] a moving target," " 'running up the costs' " of defeating the suit with serial rounds of amendments and motion practice, "undermining the very purpose of the statute" to provide " 'a quick and inexpensive method of unmasking and dismissing such suits.' " (*Medical Marijuana, supra,* 46 Cal.App.5th at p. 897.)

Here, Redwood did not allege its additional theories in the operative complaint and "produced no evidence constituting a prima facie showing" on either theory in opposition to Evernote's anti-SLAPP motion. (*Bergstein, supra,* 236 Cal.App.4th at p. 822.) "[E]ven now" on appeal, Redwood continues to float shifting explanations as to "how [it] would amend [its]

Both Lime and Evernote refused to disclose the amount . . . . Now, [Redwood] seeks through this complaint to understand the amount of money that Lime paid . . ., and to enforce its rights related to the [parties' agreements]." This is not an allegation that Evernote failed to pay additional rent due under the lease, nor an allegation that Evernote breached any contract by failing to disclose the amount of its settlement with Lime (which Redwood conceded during oral argument that Evernote *has* disclosed). Nor is the amended complaint's subsequent allegation that an unspecified "failure to abide by the terms of the [parties' agreements] prevented [Redwood] from understanding and asserting its rights . . . including, but not limited to, its rights to Additional Rent."

17

complaint to allege" a meritorious claim. (*Ibid.* [rejecting request for leave to amend complaint to allege theory unsupported by evidence submitted in opposition to anti-SLAPP motion].) For example, Redwood claimed during oral argument that the settlement violated section 15.1 of the lease as a "subletting contrary to the provisions of th[e] Lease without [Redwood]'s prior consent," making it void. But this argument is nowhere to be found in Redwood's opposition to Evernote's anti-SLAPP motion or its appellate briefing. While Redwood claimed at oral argument that it has been unable to develop its theories because it needs discovery to "flesh out [its] claims," the anti-SLAPP statute permits discovery "on noticed motion and for good cause shown" (§ 425.16, subd. (g)). Redwood could have filed a motion for discovery in the trial court before submitting its opposition to Evernote's motion. It is too late to do so now.

Redwood's approach epitomizes why "a plaintiff is not permitted to amend in the face of an anti-SLAPP motion, and particularly after" the trial court rules on the motion. (*Medical Marijuana, supra,* 46 Cal.App.5th at p. 897.) To allow Redwood to raise new theories of breach on appeal or amend its complaint again would "create [a] procedural quagmire . . . antithetical to the purpose of the anti-SLAPP statute." (*Id.* at p. 900.)

## III. DISPOSITION

The order denying Evernote's anti-SLAPP motion is reversed, and the matter is remanded to the trial court with instructions to (1) enter an order granting the anti-SLAPP motion in its entirety and striking the complaint, and (2) hold a hearing, following further briefing, to award Evernote the attorney fees to which it is entitled under section 425.16. Evernote shall recover its costs on appeal.

_____
Siggins, J.*

WE CONCUR:


_____
Brown, P. J.


_____
Goldman, J.


A169906/*Redwood City Income Partners v. Evernote Corp.*

---

* Retired Presiding Justice of the Court of Appeal of California, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.