Filed 6/17/26  Zavala v. Robinson & Wisbaum CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| RIORDAN J. ZAVALA, | |
| Plaintiff and Appellant, | G064814 |
| v. | (Super. Ct. No. 30-2024-01392743) |
| ROBINSON & WISBAUM et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Craig L. Griffin, Judge. Affirmed.

Riordan J. Zavala, in pro. per., for Plaintiff and Appellant.

Artiano & Associates, James Artiano, Joanne K. Leighton; Stone & Sallus, Jason M. Stone and Michael Peng for Defendants and Respondents Karl W. Becker, Karl Mark Becker and Gabrielle Backer-Irvin.

Collins + Collins, Robert H. Stellwagen, Jr., and David C. Moore for Defendants and Respondents Robinson & Wisbaum and Keith D. Wisbaum.

\*     \*     \*

This is an appeal from a judgment following the trial court's order granting a motion pursuant to Code of Civil Procedure section 425.16[1] (the anti-SLAPP statute) and dismissing this case for malicious prosecution, abuse of process, and intentional infliction of emotional distress in its entirety. The underlying facts relate to a Request for Elder or Dependent Adult Abuse Restraining Order (EARO) that was withdrawn before a hearing on a permanent order took place. Plaintiff Riordan J. Zavala then sued everyone remotely connected to the filing of the request for the EARO, including the elderly client, Karl W. Becker (Becker), his children, and his attorneys.

There was no issue below, and none here, as to the applicability of the first prong of the anti-SLAPP analysis. As to the second prong, the court found the claims for abuse of process and intentional infliction of emotional distress were barred by the litigation privilege. On the claim for malicious prosecution, the court found Zavala had relied entirely on his verified complaint to demonstrate a probability of prevailing. A complaint, even a verified one, is insufficient to demonstrate that admissible evidence exists that would be enough to sustain a judgment.

We agree. The anti-SLAPP motion was properly granted, and the judgment is affirmed.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

A. *The Record and Zavala's Briefing*

We must begin by noting that Zavala has not cited the record properly. Rather than citing to a page number in the clerk's transcript on appeal, his record citations refer to the register of action number and

[1] Subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.

sometimes an exhibit number, e.g.: "ROA 90, Plaintiff's Opposition To All Defendants' Motions To Strike, Ex(s). 6, 7." For our purposes, such record references are useless. California Rules of Court, rule 8.204(a)(1)(C)[2] states that briefs must "[s]upport any reference to a matter in the record by a *citation to the volume and page number of the record* where the matter appears. If any part of the record is submitted in an electronic form, citations to that part must identify, with the same specificity required for the printed record, the place in the record where the matter appears." (Italics added.) If we are unable to locate a fact purportedly in the record due to Zavala's improper citations, we disregard that fact.

B. *The Underlying Action and Related Facts*

Zavala is a disbarred former attorney. As relevant here, he was placed on inactive status on or about June 8, 2019, suspended as of July 22, 2019 and disbarred on May 1, 2020.

Zavala's sister, Regina Marie Zavala (Regina), is the former girlfriend and caregiver of Becker, who was 87 or 88 years old[3] at the time the underlying events occurred. Becker's children are Karl Mark Becker, Jr. (Karl Jr.), and Gabrielle Becker-Irvin (Gabrielle).

In February 2024, Karl Jr. contacted attorney Keith D. Wisbaum of the law firm Robinson & Wisbaum. Karl Jr. and Gabrielle were concerned about possible elder abuse by Zavala and Regina. During a meeting between Wisbaum, Becker, Karl Jr. and Gabrielle, Becker reported a number of abuses perpetrated by Zavala and Regina, including attempts to destroy

---

[2] Subsequent references to rules are to the California Rules of Court.

[3] Becker is described as "independent in many respects" but also as having "various cognitive issues, including memory loss."

Becker's family relationships, attempts to fraudulently take Becker's residence, attempts to control Becker's bank accounts, fraudulent revocation of Becker's power of attorney, health care directive and trust, and medication abuse. Becker sought advice about obtaining protection from Zavala and Regina. Wisbaum suggested options that included an EARO. Becker asked Wisbaum to prepare a request for an EARO.

Wisbaum prepared a form EARO request, which included a supporting declaration from Becker. The declaration detailed the types of abuse described above.

Becker reviewed and approved the draft and executed the declaration. Wisbaum filed the request on February 22 in *Karl Becker v. Riordan J. Zavala*, Orange County Superior Court case number 30-2024-01380354 (the EARO action).[4] On the same day, the Superior Court issued a temporary restraining order against Zavala and set a hearing for March 14.

On March 6, Becker informed Wisbaum that he had "adequate protections in place" and that the EARO "was no longer needed." He instructed Wisbaum to withdraw the EARO request. Wisbaum advised Zavala of Becker's instructions via e-mail the next day. On March 14, Wisbaum appeared in court and withdrew the EARO request.

*C. The Instant Case*

On April 12, 2024, Zavala filed a verified complaint for malicious prosecution, abuse of process, and intentional infliction of emotional distress. The basis for each cause of action were the documents and statements included in the application for the EARO. In brief, Zavala claimed that as early as November 2023, Becker had informed him that Becker wanted to

___

[4] A similar request was filed against Regina, but that matter is not relevant here.

4

leave certain real property to Regina, and he asked Zavala to prepare documents accordingly. Zavala claimed the facts alleged in the EARO application regarding abuse were "concocted."

The complaint also included historical facts in an attempt to support Zavala's claim that the allegations made in the EARO application were false. He alleged that in April 2019, Becker turned to him "and hired [Zavala] as his house counsel" to extricate him from a bad real estate deal. He had billed Becker $10,600 for work performed on Becker's behalf from April 12, 2019 through January 4, 2020. Zavala described Becker as "a former paying, satisfied client." Zavala, however, was placed on inactive status on or about June 8, 2019, and subsequently suspended and disbarred.

Zavala also alleged that around February 2024, Becker had asked him to draft letters for Becker's signature that would have revoked Becker's trust documents and revoked powers of attorney to Karl Jr. and Gabrielle. Zavala also drafted a declaration for Karl Jr.'s signature that would have renounced all rights to an apartment Becker owned. He expected payment for his work drafting these letters, and alleged Becker paid him $500.

In June 2024, two anti-SLAPP motions were filed. One was filed by Wisbaum and Robinson & Wisbaum (the Wisbaum defendants), and the other by Becker, Karl Jr., and Gabrielle (the Becker defendants). The Wisbaum defendants and Becker defendants (collectively defendants) made similar arguments. Both argued the case satisfied the first prong of the anti-SLAPP analysis because all of Zavala's purported claims arose from the EARO action. As to the second prong, defendants argued the claims for intentional infliction of emotional distress and abuse of process were subject to the litigation privilege, and Zavala could not demonstrate the requisite elements of the cause of action.

In support of their motions, defendants attached various declarations and documents, including declarations from Becker and Wisbaum.

On June 20, defendants each filed an ex parte application seeking to advance the hearing date on their anti-SLAPP motion. They contended that the scheduled date for the hearing, which was five months away, was unfairly lengthy given the stated purpose of the anti-SLAPP statute.

Zavala opposed, appearing to argue that advancing the date on the anti-SLAPP motions was an attempt to evade discovery. He claimed Wisbaum was "suborning perjury" in the EARO action and should not be "rewarded" for it.

The court granted the ex parte applications on July 8, finding exigent circumstances existed under section 425.16, subdivision (f). The hearing on the anti-SLAPP motions was advanced to August 26.

The court's minute order granting the ex parte applications also notified the parties that it intended to consider the following matters when deciding the anti-SLAPP motions: "1. Judicial notice under Evidence Code, § 452, subd. (d), that Mr. Zavala was ordered inactive by the State Bar on or about June 8, 2019, was suspended from the practice of law on or about July 22, 2019, and was subsequently disbarred on or about May 1, 2020; [¶] 2. Whether Mr. Zavala engaged in the authorized practice of law under Business and Professions Code § 6126." The court further advised Zavala that "in light of his rights under the Fifth Amendment to the US Constitution to not incriminate himself, although it is giving Mr. Zavala the opportunity to address the foregoing matters in his opposition to the special motions to strike, the Court is not requiring him to do so."

6

On August 13, Zavala filed "evidentiary objections" to the court's "sua sponte proposed considerations." (Formatting modified.) He objected to the court considering his State Bar status or whether he had engaged in the unauthorized practice of law. He asserted the court was abusing its discretion by considering these matters. He went on to state: "And so, Plaintiff is compelled to state the obvious: 1) This court is not impartial and is unable to be so; 2) The court is not a putative defense counsel here; nor, should it be acting as such; and 3) The court does not work for the Office of the District Attorney. Accordingly, and respectfully, get out. Recuse yourself." (fn. omitted.)

On the same day, Zavala also filed a document entitled "Request to Take Judicial Notice of and/or Leave to File First Amended Verified Complaint & Supporting Exhibits." (Formatting modified.) This document informed the court Zavala had filed a first amended complaint (without leave of court) on August 12. In addition to the extant causes of action, the proposed first amended complaint added a cause of action for defamation per se against Karl Jr.

On August 14, Zavala filed a joint opposition to the anti-SLAPP motions. He did not argue his claims did not fall under the ambit of the anti-SLAPP statute, effectively conceding the first prong. He argued "the court has no ability to willy-nilly" consider matters such as his state bar status. He asked the court to take judicial notice of numerous documents already before it, including the complaint and its exhibits. He requested sanctions against defendants for a frivolous motion.

With respect to the second prong of the anti-SLAPP analysis, Zavala argued his verified complaint set forth his claims which had been pled

7

pursuant to the pertinent jury instructions. Thus, he contended, the second prong could not be satisfied, and the motions should be denied.

Defendants subsequently filed reply papers. In addition to arguing the substance of their motions, they argued the court should deny Zavala's improper attempt to amend his complaint while the anti-SLAPP motions were pending.

A hearing on the anti-SLAPP motions was held on August 26. A reporter's transcript was not filed with the record, although the minute order reflects a reporter was present. There is a fairly detailed minute order which reflects that oral argument was heard, including a discussion of the proposed amended complaint.

The court granted the SLAPP motion. The first prong was satisfied based on the allegations in the complaint, which demonstrated all claims arose from the EARO action. As to the second prong, the court found the litigation privilege barred the claims for abuse of process and intentional infliction of emotional distress. With respect to malicious prosecution, the court noted that Zavala had submitted no evidence, relying solely on his verified complaint. Citing authority, the court found this was insufficient. Accordingly, the court granted both motions.

With respect to Zavala's request for judicial notice of his proposed first amended complaint, the court again noted that a complaint alone is not sufficient evidence in opposition to an anti-SLAPP motion. Further, attempting to amend the challenged causes of action to subvert a ruling on an anti-SLAPP motion is impermissible. The court found the relevant pleading was the original complaint, not the proposed amended complaint. The court found the proposed amended complaint should not have been filed and ordered it stricken.

8

As to Zavala's objections to the minute order noting the court's intent to address Zavala's bar status and the unauthorized practice of law, the court overruled the objections. The court took judicial notice that "Zavala was ordered inactive by the State Bar on or about June 8, 2019, was suspended from the practice of law on or about July 22, 2019, and was subsequently disbarred on or about May 1, 2020." The court also found that evidence in the verified complaint demonstrated that Zavala had engaged in the unauthorized practice of law and referred the matter to the district attorney. With regard to the "request for recusal" included in Zavala's objections, "the Court will simply state that it is not recused in this matter. The Court is confident that it is and can remain impartial in this matter. The Court to its knowledge has never had any prior dealings with Mr. Zavala, and indeed never even heard of him until the present motions were brought to its attention. The concerns expressed above were brought to the Court's attention solely through the papers filed in this case and statutorily authorized judicial notice." (Formatting modified.)

Zavala filed an "objection" to this minute order, as well as objections to the proposed orders submitted by defendants. The court subsequently overruled all objections, signed proposed orders submitted by defendants, and dismissed the entire action with prejudice. The orders stated that defendants were entitled to their costs and attorney fees as prevailing parties on the anti-SLAPP motions.

Zavala now appeals.

DISCUSSION

I.

DEFENDANTS' ANTI-SLAPP MOTIONS

Because defendants' anti-SLAPP motions are substantially similar and based on identical grounds, we address them together. As to the scope of this appeal, Zavala states that he is not contesting the trial court's order with respect to striking the proposed first amended complaint or the anti-SLAPP ruling on his claim for intentional infliction of emotional distress.

*A. Statutory Context and Standard of Review*

"The purpose of the anti-SLAPP statute is to dismiss meritless lawsuits designed to chill the defendant's free speech rights at the earliest stage of the case." (*Timothy W. v. Julie W.* (2022) 85 Cal.App.5th 648, 657.) The anti-SLAPP statute states: "'A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.'" (§ 425.16, subd. (b)(1).)

As relevant here, section 425.16, subdivision (e), defines an "'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue'" as: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a

legislative, executive, or judicial body, or any other official proceeding authorized by law."

The anti-SLAPP analysis involves two steps. "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.) In deciding whether the plaintiff's cause of action is subject to an anti-SLAPP motion, "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).)

"'On appeal, we review the trial court's decision de novo, engaging in the same two-step process to determine, as a matter of law, whether the defendant met its initial burden of showing the action is a SLAPP, and if so, whether the plaintiff met its evidentiary burden on the second step.'"[5] (*Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1162.)

---

[5] Zavala spends a considerable amount of space complaining about what the trial court considered or did not consider. On de novo review, the court's consideration of a matter Zavala believes inappropriate or its failure to consider some point does not constitute reversible error. "We review the court's ruling, not its reasoning . . . ." (*Caro v. Smith* (1997) 59 Cal.App.4th 725, 735.)

11

*B. Protected Activity*

We must first decide whether the challenged claims arise from acts in furtherance of defendants' right of free speech or right of petition under one of the categories set forth in section 425.16, subdivision (e). "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062–1063.) "[T]he focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.'" (*Ibid.*)

This is not a close call, and Zavala does not contest it. All of Zavala's causes of action arise directly from the statements and claims set forth in the EARO action. Defendants have satisfied the first prong of the anti-SLAPP analysis.

*C. Minimal Merit*

In the second step of the anti-SLAPP analysis, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Baral v. Schnitt, supra,* 1 Cal.5th at p. 396.) "The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] '[C]laims with the requisite minimal merit may proceed.'" (*Id.* at pp. 384–385.)

"As to the second step inquiry, a plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.'"

12

(*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940 (*Sweetwater*).) "In opposing an anti-SLAPP motion, the plaintiff cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.)

"[A]t the second stage of an anti-SLAPP hearing, the court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial. Conversely, if the evidence relied upon *cannot* be admitted at trial, because it is categorically barred or undisputed factual circumstances show inadmissibility, the court may not consider it in the face of an objection." (*Sweetwater, supra,* 6 Cal.5th at p. 949.)

1. Abuse of Process

Codified at Civil Code section 47, subdivision (b), the litigation privilege "provides absolute immunity for publications and statements made in an 'official proceeding authorized by law.' [Citations.] The privilege extends to those made before the proceeding 'if they have some logical connection to the suit and are made to achieve the objects of' the proceeding." (*Howard Jarvis Taxpayers Assn. v. Powell* (2024) 105 Cal.App.5th 955, 971.)

The privilege is broad and it applies to claims for abuse of process. (*Pollock v. University of Southern California* (2003) 112 Cal.App.4th 1416, 1430.) The privilege applies "'to any communication, whether or not it amounts to a publication [citations], and all torts except malicious prosecution. [Citations.] Further, it applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved. [Citations.] [¶] The

13

usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]' [Citation.] Thus, 'communications with "some relation" to judicial proceedings' are 'absolutely immune from tort liability' by the litigation privilege. [Citation.] It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057.) "[T]he litigation privilege is absolute and applies regardless of malice[,]" and "'has been given broad application.'" (*Id.* at p. 1063.)

Zavala's complaint alleged that defendants submitted perjured testimony in the EARO action with the intent to damage his reputation. There is no question these statements were made by litigants in the EARO action to achieve the objectives of the litigation, which provides the necessary connection to the action.

Contrary to Zavala's belief, the litigation privilege is not an "end run" around an otherwise permissible cause of action. It is a complete defense, no different from, for example, the statute of limitations. "'A plaintiff cannot establish a probability of prevailing if the litigation privilege precludes the defendant's liability on the claim.'" (*Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 814.) Zavala has failed to overcome the litigation privilege, and the court therefore properly found Zavala could not prevail on a claim for abuse of process.

2. Malicious Prosecution

"To establish a cause of action for malicious prosecution, the malicious prosecution plaintiff must demonstrate that the prior action was

14

'(i) initiated or maintained by, or at the direction of, the defendant, and pursued to a legal termination in favor of the malicious prosecution plaintiff; (ii) initiated or maintained without probable cause; and (iii) initiated or maintained with malice.'" (*Kinsella v. Kinsella* (2020) 45 Cal.App.5th 442, 453, fn.6, italics omitted.)

As the trial court noted, Zavala did not submit any evidence with his opposition to the anti-SLAPP motion. Instead, he relied on his verified complaint and the pattern jury instructions for his pleaded causes of action. In the text of his opposition, he included a procedurally improper "request for judicial notice" of documents related to the EARO action, including the application and supporting affidavits. He contended that he had presented "evidence of a prima facie case" in his verified complaint. (Formatting modified.)

Zavala cites to *Kinsella v. Kinsella, supra,* 45 Cal.App.5th at p. 449, referring to it as "dispositive." In that case, the party opposing the anti-SLAPP motion introduced a declaration from the litigant and supporting exhibits *in addition to* the verified complaint of the party opposing the motion. Zavala claims *Kinsella* supports his contention that a verified complaint alone is sufficient. But in doing so he ignores a key sentence in the case *Kinsella* relies on: "[A] plaintiff seeking to demonstrate the merit of the claim '*may not rely solely on its complaint, even if verified*; instead, its proof must be made upon competent admissible evidence.'" (*Sweetwater, supra,* 6 Cal.5th at p. 940, italics added.) Indeed, Zavala cites no case where a verified complaint alone has been held to be legally sufficient on the second prong of the anti-SLAPP analysis. This is not surprising; any such case would have to either predate the language in *Sweetwater* or disregard it entirely.

15

## II.

## OTHER MATTERS

### A. Purported Recusal Motion

Zavala contends "the trial judge clearly demonstrated his bias and prejudice toward" him. In response, Zavala's "Objection to Court's Sua Sponte Proposed Considerations," included the sentence: "Accordingly, and respectfully, get out. Recuse yourself." (Formatting modified.) The trial court later noted that it was not recused.

To the extent Zavala is asking this court to review this matter (which is not entirely clear), and to the extent we were to interpret "get out" as a procedurally proper request for recusal, it is not reviewable. "[R]equests for disqualification are not reviewable on appeal. 'The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought only by the parties to the proceeding.'" (*Woolard v. Regent Real Estate Services, Inc.* (2024) 107 Cal.App.5th 783, 794.)

### B. Improper Motion to Strike

In his reply brief, Zavala asks this court to strike the Wisbaum defendants brief, claiming it was improperly served. It is improper to make a motion in a reply brief. Rather, any such motion must be served and filed and accompanied by evidence and a memorandum of points and authorities. (Rule 8.54(a)(1), (2).) Filing and serving motions separately allows the other party to oppose the motion (Rule 8.54(a)(3)), which a mere mention in a reply brief does not. The motion to strike is denied.

16

# DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal. Defendants are also entitled to attorney fees on appeal, subject to the appropriate motion in the trial court. (§ 425.16, subd. (c)(1).)


MOORE, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


SCHWARM, J.*


*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.